WHITE, JOS. S., Circuit Judge
(retired).
This case is here on an appeal direct to this Court from an order of the Circuit Court granting defendants’ motion to dismiss a complaint by taxpayers, for injunc-tive relief, and dissolving a temporary injunction. The Court is called upon to decide the constitutionality of the procedure adopted by defendants, as the taxing authority of a public school district, in assessing district school taxes for the fiscal year beginning July 1, 1967, and ending June 30, 1968.
The Attorney General, with the Court’s consent, has filed a brief as Amicus Curiae and argues that the lower court’s ruling should be upheld.
Plaintiffs, Appellants here, claim to be taxpayers within the school district, comprised of Bay County. They contend that the procedure in question violates Section 10, Article XII, of the Florida Constitution, F.S.A., which reads:
“The Legislature may provide for the division of any county or counties into convenient school districts; and for the election biennially of three school trustees, who shall hold their office for two years, and who shall have the supervision of all the schools within the district; and for the levying and collection of a district school tax, for the exclusive use of public free schools within the district, whenever a majority of the qualified electors thereof that pay a tax on real, or personal property shall vote in favor of such levy; Provided, that any tax authorized by this section shall not exceed ten mills on the dollar in any one year on the taxable property of the district.”
The following facts are disclosed by the complaint, as amended, and the exhibits appended thereto:
On August 5, 1965, the County Superintendent of Public Instruction certified to the State Superintendent of Public Instruction for approval the annual school budget for the fiscal year beginning July 1, 1965, and ending June 30, 1966. The assessed value of non-exempt property within the district was represented to be $61,000,000, the valuation to be used in computing a tax *199 necessary to meet the budget for that fiscal year.[1]
On October 7, 1965, the budget received the approval of the State Superintendent of Public Instruction.
On October 20, 1965, the Board of Public Instruction recommended approval by the taxpayers within the district of a levy of 10 mills as necessary to raise sufficient tax to meet budget needs for the 1966-1967 biennium.[2]
On November 3, 1965, the election was held and the proposed millage rate was approved.[3]
On August 1, 1966, the County Superintendent of Public Instruction certified to the State Superintendent of Public Instruction for approval the annual School Budget for the fiscal year beginning July 1, 1966, and ending June 30,1967. The certificate recited an assessed value of non-exempt property in the amount of the 1966 assessment roll, to-wit, $65,585,000.
On October 25, 1966, the budget received the approval of the State Superintendent of Public Instruction.
It is alleged that the millage rate which was applied to the 1966 assessment roll produced a school district tax of $579,000.
Controversy arose, according to the complaint, as amended, during the year 1967, when school taxing authorities proceeded to certify a budget for the fiscal year beginning July 1, 1967 and ending June 30, 1968, and, without an approving vote of the taxpayers, proposed a millage rate of 3 mills to be applied to the 1967 tax roll now increased to $320,000,000. This, it is alleged, would produce a school district tax of $912,000.[4]
This procedure, it is asserted by the plaintiffs, imposes upon the taxpayer a much greater tax burden than was contemplated *200 when he approved a millage rate of 10 mills at the November, 1965, election.[5] They seek to prevent this by writ of injunction.
It is alleged in the complaint, as amended, and now undisputed: “That such tax (the 1965-tax roll amounting to $61,000,000) was prepared in violation of law and did not contain assessments of property of Bay County at its fair market value and was therefore an invalid tax roll as was the tax roll of 1966; that a systematic undervaluation of property had been the custom in Bay County and in the other counties of the state for many years and this custom was well known to the defendants. The millage recommended and approved at the election of 1965 was much higher than the millage which would have been required to produce the specified income on a tax roll containing the just value of the nonexempt taxable district property; that the district taxpayers were misled in voting millage far in excess of that which would have produced the income specified in the budget as being required for the district on a valid assessment roll and therefore the election was invalid and of no force and effect; and does not constitute a consent on the part of the taxpayers to be taxed and no district millage should be levied.”
Defendants, by motion to dismiss addressed to the complaint, as amended, take the position that the procedure described by plaintiffs is justified by the provisions of Statute 193.03, in force during the year 1965, Statute 193.032, which took effect January 1, 1966, and Statute 236.33. These statutes authorize the taxing authorities to “roll back” the millage approved by the voters to produce revenue necessary to meet the requirements of the public school districts. It is provided by Statute 193.032 that: “Nothing contained in § 193.03 as amended and 193.031 (new section) by chapter 65-258 shall require the reduction of millage authorized to be levied pursuant to the provisions of section 10, article XII of the Constitution of Florida.”
In granting defendants’ motion to dismiss, and dissolving a temporary injunction issued previously, the lower court ruled that “the approval of the millage of 10 mills in the 1965 district election by a majority of the district tax-payers empowered the County Board of Public Instruction to levy any amount up to 10 mills, irrespective of the amount of the tax rolls of 1965, 1966 and 1967.”
Plaintiffs argue that at the time of the 1965 election the taxing authorities, by their long course of conduct in assessing property at less than full value, lulled them into the belief that their tax burden would be one thing, whereas the increase of the 1967 assessment roll to full value resulted in another; that they were thus deceived and the avowed purpose of Section 10, Art. XII, of the Florida Constitution to give them a voice in the tax burden they were to bear was nullified.
Similar circumstances were before the District Court of Appeal, Second District, in Board of Public Instruction of Hendry County v. State ex rel. Hilliard, Fla.App. 1966, 188 So.2d 337. It was decided in that case that the procedure was improper. The Court said:
“On the 1964 tax roll the maximum of 20 mills was applied. Without any consent of the taxpayer and by merely tripling the tax roll for 1965 the School Board would receive three times the maximum amount of monies allowed by the constitution. Under § 193.03(6) the Tax Assessor of Hendry County certified to the School Board a tax reduction ratio of 2.93. Applying this ratio to the 20 mills would result in a millage of 6.85 when carried to the nearest two-decimal figure. By increasing this figure to 8.5 mills under the guise of §§ 237.05 et seq., it can *201 easily be seen that the constitutional maximum has in effect been exceeded. It is this very injustice which § 193.03 is intended to prevent.”
The opinion in that case was made the opinion of this Court in Board of Public Instruction of Hendry County v. State ex rel. Hilliard, Fla.1966, 191 So.2d 561.
In deciding questions relating to procedure employed by a governmental taxing agency one must bear in mind at the outset that laws providing for taxation must be construed most strongly against the government and liberally in favor of the taxpayer. 30 Fla.Jur., Taxation, Sec. 52; City of Miami v. Schonfeld, Fla.App.1961, 132 So.2d 767; State of Florida et al v. City of Boca Raton, Fla.1965, 172 So.2d 230.
Likewise, where construction is in order, constitutional provisions, as well as statutory enactments, are to be interpreted so as to accomplish rather than defeat their purpose. 6 Fla.Jur., Constitutional Law, Sec. 14; Owens, Tax Assessor, et al v. Fosdick, (1943) 153 Fla. 17, 13 So.2d 700.
Undoubtedly, Sec. 10, Art. XII, of the Florida Constitution has for its purpose the giving to the taxpayer of a voice in the amount of tax he shall pay for public school purposes. If such a purpose be eliminated or cast aside the constitutional provision in question becomes meaningless and calls for an idle gesture on the part of the voter.
The taxpayer can have a voice in the tax he is to pay only ff he has a firm indication in the first place of what valuation the millage he approves is to be applied. The procedure described in the complaint, as amended, whereby property was assessed according to a systematic plan adopted by the taxing authorities to value property at less than its full value at the time the taxpayer was requested to vote, and according to a different plan followed at a later time, the result of which is to substantially increase his tax burden, without approval by the taxpayer, is deceptive and nullifies the purpose of the constitutional provision in question. Statutory enactment, or procedure by the taxing authorities under the guise of statutory law, which brings about such a result is illegal and cannot stand in the face of the clear purpose of the Constitution.
Defendants argue that the taxpayer was not misled or deceived and should not be heard to complain because: “Every owner of property is presumed to know the market value of his property.” Such an argument might prove ■ sound if at the time of the election the taxing authorities had followed the plan of assessing property at full value. But such was not the case according to the undisputed allegations of the complaint, as amended. Here, the fact is that the taxing authorities assessed property at less than full value arrived at by their own uncontrolled and arbitrary estimate. It will be remembered that in arriving at the amount of millage to be submitted to the taxpayer in the 1965 election the School Board relied upon the 1965 assessment roll. In voting upon the millage thus computed, the taxpayer had a right to do likewise.
The purpose of the “roll-back” statutes (St. 193.03 and St. 193.032) was to “prevent an injustice to the taxpayer when a general re-evaluation of property is made within a county and the tax roll is thereby increased.” Board of Public Instruction of Hendry County v. State ex rel. Hilliard, supra. Rolling back the millage, but at the same time increasing the assessment roll with the result that the taxpayer’s burden is substantially increased does not bring about such a result. On the contrary, the result is quite the opposite. Instead of the statutes being applied as a shield of protection, they are being used as a sword to nullify their very purpose.
Under Sec. 10, Art. XII, the School Board must go to the taxpayers every two years to find out how much may be levied in the next two years for public school purposes. However, this does not mean necessarily that when the circumstances demand it, a millage so approved may not be aban *202 doned during the biennium in question and a new one submitted for taxpayer approval. The Constitution requires that any millage to produce a substantially greater tax burden must be so approved at an election provided by law.
 At this stage of the proceedings the allegations of the complaint, as amended, which are well pled must be taken as true. When the principles to which reference has been made are applied to the facts, thus admitted, the conclusion is that the complaint, as amended, states a cause of action and should not have been dismissed nor the temporary injunction dissolved.
It will be noted that in Board of Public Instruction of Hendry County v. State ex rel. Hilliard, supra, relief was denied the taxpayer because of the overriding public good. In the case now before the Court, neither defendants’ motion to dismiss, the lower court’s order granting the motion to dismiss, cross-assignment of error, appellees’ brief, nor the brief of the Amicus Curiae, mentions the point. Hence, its consideration here seems inappropriate.
In the event it becomes necessary for the fixing of an equitable levy by the chancellor more responsive to the will of the people as expressed in the 1965 millage election, such levy should not be one that would result in a substantially greater tax on the involved parcel than would have resulted had the assessment on such parcel remained unchanged.
Reversed.
CALDWELL, C. J., and ROBERTS and DREW, JJ., concur.
ERVIN, J., dissents with Opinion.
THOMAS and THORNAL, JJ., dissent and agree with ERVIN, J.

. The millage necessary to raise budget needs for the fiscal year beginning July 1, 1965, and ending June 30, 1966, would be applied to the 1965 assessment roll. This roll would be in the hands of the Board of Equalization by the first Monday in July, 1965. It is alleged in the complaint that the 1965 roll was, in fact, $61,000,000 and that the millage rate used actually resulted in a school district tax of $579,000. Hence, it is seen that the Board of Public Instruction relied upon the 1965 assessment roll in reciting in the certificate a proposed assessment of $61,000,000. This is important in view of the allegation made by plaintiffs, and now undisputed, that for many years property had been systematically undervalued.

. Neither the budgets nor the assessment rolls for 1966-1967 biennium could then be known. At that time the taxing authorities, in recommending to the taxpayers a millage rate necessary to meet budget needs for those years, had only the 1965 budget and assessment roll upon which to rely. Likewise, the taxpayers could be expected to rely upon the same data in making a choice of millage. Allegations, which are undisputed at this point, to this effect are found in paragraph 8 of the complaint, and in paragraph B of the Amendment to Complaint.

. In the ordinary course of events this millage, or a sum sufficient to raise budget needs, not exceeding the total millage approved at the election, would be applied to the tax roll for the year 1966 and the tax so determined would be due and payable by the taxpayer November 1, 1966. Actually the tax assessment of non-exempt property for 1966 amounted to $65,585,000, but it is alleged that the change “did not increase the taxes of the individual district taxpayers as the increase in the roll in 1966, which gave the district greater funds, resulted from taxes on properties which were not assessed in 1965.”

. The reasons behind such an increase in the 1967 assessment roll are well known. The practice which had been followed throughout the State of Florida for many years in assessing property for taxation at less than its actual value was disapproved by this Court and tax assessors were ordered to assess property at full value. See Walter v. Shuler, Fla.1965, 176 So.2d 81. The increase resulted.

. In the ordinary course of events the 3 mills would be applied to the tax roll during the year 1967 and the resulting tax would be due and payable by the taxpayer November 1, 1967.