David H. Pingree Secretary Department of Health and Rehabilitative Services Tallahassee
QUESTION:
May the Department of Health and Rehabilitative Services forgive annual repayments for loans made to group-living homes prior to October 1, 1976?
SUMMARY:
The department is authorized and required to forgive 20 percent of the principal of loans made prior to October 1, 1976, to eligible group-living homes upon approval by the department of each annual statement of services provided.
The Group-Living Home Trust Fund was established by Ch. 75-197, Laws of Florida codified as s. 393.15, F. S. Subsection (1) of s.393.15 states the legislative intent and purpose for creating this Group-Living Home Trust Fund:
 The Legislature finds and declares that the development of community-based treatment facilities for the retarded, autistic, or other developmentally disabled is desirable and recommended and should be encouraged and fostered by the state. The Legislature further recognizes that the development of such homes is financially difficult for private individuals, due to initial expenditures required to adapt existing structures to the special needs of the retarded, autistic, and other developmentally disabled clients who may come to reside in such homes. Therefore, it is the intent of the Legislature by this act to develop a loan trust fund to provide support and encouragement in the establishment of community-based group living homes for the retarded, autistic, and other developmentally disabled.
The Department of Health and Rehabilitative Services is vested with the authority to grant loans to eligible group-living for the initial costs of development of such homes. Section 393.15(3), F. S. Subsection (3) provides that the `[c]osts of development may include structural modification, the purchase of equipment and fire and safety devices, and the purchase of insurance. Such costs shall not include the actual construction of a group-living home.' Pursuant to this authority, the department granted a number of loans to eligible group-living homes. The inquiry indicates that such loans were made on or about October 1, 1975. Subsequent to these loans, s. 393.15, F. S., was amended by Ch. 76-128, Laws of Florida. Section 393.15(5), prior to this amendment, provided that any loan granted by the department pursuant to that section was to be repaid within 5 years. Subsection (5), as amended by Ch. 76-128, now reads:
 Any loan granted by the department under this section shall be repaid by the group-living home within 5 years. A group-living home operating as a nonprofit corporation meeting the requirements of s. 501(c)3 of the Internal Revenue Code shall submit to the department a statement setting forth the residential service it has provided during the year together with such other information as the department by rule shall require, and, upon approval of each such annual statement, the department shall forgive 20 percent of the principal of such loan. (Amendatory language emphasized.)
Section 393.15(5), F. S., as amended by Ch. 76-128, Laws of Florida, now allows the department to forgive, on a yearly basis, 20 percent of the principal of such loans made to qualified group-living homes. Subsection (5) would, in effect, allow the department to forgive 100 percent of the loan over the 5-year period of repayment. The department questions whether the provisions of s. 393.15(5), allowing remission of loans, could be applied to those loans made during the period from October 1, 1975 (the date the authority to grant loans to group-living homes initially enacted by Ch. 75-197 became effective), to October 1, 1976 (the date Ch. 76-128, allowing forgiveness of loans granted pursuant to s. 393.15, became effective).
Your predecessor questioned whether the department could amend existing contracts entered into by certain group-living homes and the department between October 1, 1975, and October 1, 1976, to include a forgiveness clause implementing the statutory provisions of s. 393.15, F. S., as amended. The terms of Ch. 76-128, Laws of Florida, do not require and are not conditioned upon contractual arrangements to implement the remission of the statutorily imposed repayment obligation. The department's discretion in granting remission as prescribed by the amended statute is limited to approving the required annual statement setting forth the residential service provided by an eligible group-living home during the preceding year and such other information the department by rule may require. The pertinent portion of s.393.15(5) provides that `upon approval of each such annual statement, the department shall forgive 20 percent of the principal of such loan.' (Emphasis supplied.)
I assume that any amounts repaid by group-living homes on loans made pursuant to the authority granted by s. 393.15, F. S., as amended, have been deposited in the State Treasury and credited to the appropriate fund, as required by ss. 215.31 and 215.32, F. S.See s. 215.26, F. S., as to the procedures to be followed for refunds of payments made into the State Treasury in error or when no account is due.
Therefore, this opinion is confined to the question of whether the annual pro rata remission of loans made to eligible group-living homes authorized and required by Ch. 76-128, Laws of Florida, is applicable to loans made prior to October 1, 1976.
The paramount rule of statutory construction is that the legislative intent and purpose behind the enactment must be determined and effectuated, if possible. Lewis v. Mosley,204 So.2d 197 (Fla. 1967); Armstrong v. City of Edgewater,157 So.2d 422 (Fla. 1963); and Florida State Racing Comm. v. McLaughlin,102 So.2d 574 (Fla. 1958). There might be some concern that applying the remission or forgiveness provisions of s. 393.15, F. S., as amended, to loans made during the period between October 1, 1975, and October 1, 1976, would come within the general rule that statutes, unless they show a clearly expressed legislative intent to apply to past transactions, will not be given a retroactive application. See Walker LaBerge, Inc. v. Halligan, 344 So.2d 329
(Fla. 1977); State ex rel. Riverside Bank v. Green, 101 So.2d 805
(Fla. 1958); and Larson v. Independent Life Accident Insurance Co., 29 So.2d 448 (Fla. 1947). A retrospective law is defined at 73 Am. Jur.2d Statutes s. 348, p. 486 (1974), as `one which takes away or impairs vested rights acquired under existing laws, or creates a new obligation and imposes a new duty or attaches a new disability in respect to transactions or considerations already past.' Moreover, as stated at 85 C.J.S. Statutes s. 412, p. 980 (1953), a statute does not operate retroactively merely because it relates to antecedent events. Thus, the public policy behind the prohibition against the retrospective application of a law is to prevent divestment of property rights or vested rights generally.
Applying these statutory rules of construction to the factual circumstances presented by this inquiry, it does not appear that allowing the 20 percent annual remission provisions (enacted by Ch. 76-128, Laws of Florida, to apply to repayments becoming due on or after October 1, 1976, for loans made to group-living homes prior to that date) would be a retroactive application of the law. While applying to loans made prior to the effective date of Ch. 76-128, such forgiveness or remission operates on those repayments becoming due on or after the amended statute became an operative law and therefore such loans are merely antecedent events which are not detrimentally affected. Moreover, the remission of these debts or obligations to the state is a matter of legislative grace, a voluntary act of forgiveness without any consideration therefor. See 76 C.J.S. Remission, p. 903 (1952). Cf. Roe v. Roe,124 So. 734 (Fla. 1929). The statutorily prescribed remission of these debts, in the absence of legislative intent to the contrary, of necessity applies to obligations entered into on or after October 1, 1975, the effective date of Ch. 75-197, Laws of Florida, codified as s. 393.15, F. S. Also, the requirement of s.393.15(5), F. S. (1976) Supp.), that affected group-living homes submit to the department a statement setting forth the residential services provided by the homes `during the year' addresses a period of time prior to the effective date of the 1976 amendatory legislation. No vested rights of the affected group-living homes are impaired or taken away, nor are any new duties or obligations imposed on or disabilities attached to such homes by the amendatory legislation with regard to the loans made and obligations entered into before the effective date of Ch. 76-128. Any property rights or other vested rights of the state in regard to these obligations were voluntarily forgiven or relinquished by the Legislature by Ch. 76-128.
Assuming, arguendo, that allowing the 20 percent annual forgiveness for repayments becoming due on or after October 1, 1976, on loans made prior to that date could be construed as a retroactive application of Ch. 76-128, Laws of Florida, it still appears that the annual forgiveness should be permitted. While statutes as a general rule will not be given a retroactive application, statutes of a remedial nature or statutes clearly showing a legislative intent and purpose to apply to past transactions or obligations will be given a retrospective application. See 72 C.J.S. Statutes ss. 416 and 421 (1953); City of Lakeland v. Catinella, 129 So.2d 133 (Fla. 1961); Maxwell v. School Board of Broward County, 330 So.2d 177 (4 D.C.A. Fla., 1976); and Grammer v. Roman, 174 So.2d 443 (2 D.C.A. Fla., 1965). It is clear that a statute forgiving 20 percent annually of a loan made by the department does not divest any property rights or impose any new obligations and is thus remedial in nature. Therefore, the remission provisions of Ch. 76-128 should apply to annual repayments becoming due on or after October 1, 1976, even though the loan was made prior to the effective date of Ch. 76-128, provided affected group-living homes qualify by satisfying the requirements specified in s. 393.15, F. S.
Finally, `[t]he question whether a statute operates retrospectively, or prospectively only, is one of legislative intent.' 72 Am. Jur.2d Statutes s. 350, p. 487 (1974). An examination of s. 393.15, F. S., in its entirety, and the amendatory language of Ch. 76-128, Laws of Florida, providing for the remission of loans made by the Department of Health and Rehabilitative Services to group-living homes, leads to the conclusion that payments becoming due and payable on or after October 1, 1976, the effective date of Ch. 76-128, should be forgiven if the conditions stipulated in s. 393.15(5) are fulfilled; such forgiveness should be granted regardless of the date of the loan if such loan was made pursuant to s. 393.15 and the group-living home qualifies thereunder. Section 393.15(5) provides: `Any loan granted by the department under this section
[s. 393.15] shall be repaid by the group-living home within 5 years.' (Emphasis supplied.) The amendatory language of Ch. 76-128, after specifying the conditions for forgiveness, goes on to state that, `upon approval of each such annual statement [of services provided during the preceding year], the department shall forgive 20 percent of the principal of such loan.' (Emphasis supplied.) The only predicate clarifying the expression `such loan' is the first clause of subsection (5) emphasized above. This language is not restrictive and is comprehensive enough to evince a legislative intent to include those loans made to group-living homes between October 1, 1975, and October 1, 1976, the period during which the loans were authorized, but prior to the effectiveness of the remission provisions of Ch. 76-128.
It is, therefore, my conclusion that the 20 percent annual forgiveness or remission provisions enacted by Ch. 76-128, Laws of Florida, should apply to all loan repayments from eligible group-living homes becoming due on or after October 1, 1976, the effective date of Ch. 76-128, for all loans made to group-living homes by the Department of Health and Rehabilitative Services pursuant to its loan-making authority provided by s. 393.15, F. S., provided the debtor group-living homes qualify and satisfy the conditions specified by Ch. 76-128.
Prepared by:
Craig B. Willis Assistant Attorney General