Louie L. Wainwright Secretary Department of Corrections Tallahassee
QUESTIONS:
1. Does the Department of Corrections have independent authority to purchase raw materials for manufacture in its correctional work program?
2. Does the exception set forth in s. 287.012(2), F. S., which excludes from the definition of `commodities' those items purchased for resale, apply to materials purchased by the Department of Corrections for manufacture and subsequent use by the department and, if surplus to its needs, for sale to other governmental agencies?
SUMMARY:
The department is not empowered by law to independently and directly purchase `commodities' or raw materials for the purpose of manufacturing new items as finished products for use by the department, or sale to other governmental agencies in the event such items are surplus to the needs of the department, and such purchase are not excluded as a commodity purchased for resale from the regulatory requirements of part I, Ch. 287, F. S.
These questions are interrelated and will therefore be answered together.
Both questions are answered in the negative.
Your letter of inquiry states that the Correctional Industries Program operated by the Department of Corrections purchases commodities solely for the `manufacture and subsequent resale to various governmental subdivisions.' The department apparently wishes to purchase independently and directly such commodities or raw materials for the purpose of manufacturing new items or finished products for sale to other agencies. For example, the Department of Corrections would like to purchase commodities such as `textile yard goods' solely for the purpose of `manufacture of uniforms, bedding, etc.,' for subsequent sale to various governmental agencies.
As you stated, the Division of Purchasing of the Department of General Services has construed s. 287.012, F. S., to require all such purchases to be made through the division; however, the Department of Corrections thinks that commodities purchased for manufacture and resale in the correctional industries program should be considered exempt, or excluded from the definition of `commodity' set forth in s. 287.012(2). The Department of Corrections states that it
 would certainly continue to utilize the services of the Division of Purchasing in most instances, [but] such an exemption would provide our production facilities greater flexibility in purchasing materials to meet unexpected needs and fluctuating customer order demands as well as take advantage of any seasonal price changes possibly resulting in a savings to the state and greater productivity of the program.
It is clear that the Department of Corrections is within the definitional purview of s. 287.012(1), F. S., and is bound by the operative provisions of part I, Ch. 287. Authority over many aspects of state purchasing is vested in the Division of Purchasing by s. 287.042, F. S., which reads in pertinent part:
 The Division [of Purchasing] shall have the following powers, duties, and functions pertaining to commodities:
 (1) To canvass all sources of supply and contract for the purchase, lease, or acquisition in any manner of all commodities required by the state government or any of its agencies under competitive bidding or by contractual negotiation, in the manner hereinafter provided;
 (2) To plan and coordinate purchases in volume and to negotiate and execute purchasing agreements and contracts under which the division shall require state agencies to purchase . . . .
 (4) The prescribe the methods of securing bids or negotiating and awarding contracts;
 (7) To govern the purchase by an agency of any commodity; to establish standards and specifications for any commodity; and to set the maximum fair prices that shall be paid for any commodity; (Emphasis supplied.)
Section 287.012(1), F. S., defines `agency' as `any of the various state officers, departments, boards, commissions, divisions, bureaus, councils, and any other unit of organization however designated.' Purchase of materials which are `commodities' by the Department of Corrections is thus subject to the division's supervision and control.
The term `commodity' for purposes of part I, Ch. 287, F. S., is defined by s. 287.012(2):
 `Commodity' means any of the various supplies, materials, goods, merchandise, class B printing, equipment, and other personal property purchased, leased, or otherwise contracted for by the state and its agencies. However, commodities purchased for resale except class B printing are excluded from this definition. (Emphasis supplied.)
Therefore, unless the Department of Corrections is granted by law the independent authority to make specified purchases, or unless those purchases are within the excluded definition of commodities found in s. 287.012(2), supra, the department's purchases are controlled by part I, Ch. 287 and the Division of Purchasing of the Department of General Services.
The Department of Corrections is authorized, pursuant to s. 945.06(2), F. S., to supervise the manufacture, processing, or production by prison inmates of `such items as are practical and adaptable for prison industry and are needed and used in state institutions and agencies and in other governmental jurisdictions of the state.' See also, s. 945.066(1)(b) and (2), F. S. Section 945.066(2) provides the authorization to implement a `correctional work program,' the subject matter of the present inquiry.
Section 945.16(1), F. S., provides:
 All services or items manufactured, processed, grown, or produced by the department in its present programs or in future programs and not required for use therein may be furnished or sold to all state agencies, departments, and institutions; political subdivisions of the state; other states; or agencies of the federal government within the state.
Section 945.17, F. S., establishes the `Correctional Work Program Trust Fund'; s. 945.19, F. S., provides that the moneys from this fund shall be used to finance `the operation of the correctional work programs herein set forth, and all costs of operation of correctional work programs shall be paid from this fund, including compensation of all personnel whose time or portion of time is devoted to such work program operations.' The only specific contracting authority granted to the Department of Corrections by s. 945.19 is `to enter into less-purchase agreements for the lease of fixtures and equipment . . . .' Such agreements are permitted to extend beyond the current fiscal year, but `are subject to annual legislative appropriations.' Additionally, the department has the `authority to construct buildings or make capital improvements for the operation of said work programs.'
No authority is granted to the Department of Corrections by Ch. 945, F. S., to independently and directly purchase `commodities' or raw materials for the purpose of manufacturing new items or finished products for use by the department, or for sale to other governmental agencies in the event such items are surplus to the needs of the department.
You question whether commodities or other items of personal property purchased for manufacturing new items, such as uniforms or bedding, and subsequent sale to other governmental agencies could be classified within the exception to the definition of `commodities' found in s. 287.012(2), supra, for `commodities purchased for resale.' Such exclusion would exempt the purchases from the regulatory operations of part I, Ch. 287, F. S. I conclude that these purchases are not excluded from the definition of `commodities' and thus authority over the purchase of commodities for use in the department's correctional work program is vested in the Division of Purchasing of the Department of General Services.
The guiding light for statutory construction is legislative intent which, if possible, must be determined and effectuated. Lewis v. Mosley, 204 So.2d 197 (Fla. 1967); Armstrong v. City of Edgewater,157 So.2d 422 (Fla. 1963); and Florida State Racing Comm. v. McLaughlin, 102 So.2d 574 (Fla. 1958). Nothing in the legislative history or in the language of s. 287.012(2), F. S., as it is now written, evinces a legislative intent to exclude from the coverage of part I, Ch. 287, F. S., the purchase of raw materials for manufacture and subsequent sale to other governmental agencies. The definition of commodities originally excluded only school textbooks and other instructional aids covered by Ch. 233, F. S. 1955. See s. 287.01(2), F. S. 1955, and AGO 055-50. While the definition of commodities has been revised and amended to its present form to exclude `commodities purchased for resale except class B printing,' there is no legislative intent, either express or implied, to include the purchase of raw materials, such as `textile yard goods,' for the `manufacture of uniforms, bedding, etc.,' and their subsequent sale to other governmental agencies, within the exclusion of s. 287.012(2), F. S.
An exclusion or exception to a general, definitional statute is to be strictly construed so as not to interfere with the general purposes of the statute. See Farrey v. Bettendorf, 96 So.2d 889
(Fla. 1957), and Futch v. Adams, 36 So. 575 (Fla. 1904). An exception to a general statute is to be strictly construed against the one who attempts to take advantage of the exception, and, unless the right to the exception is clearly apparent, the exception will not be allowed. See State v. Nourse, 340 So.2d 966
(3 D.C.A. Fla., 1976).
Part, I, Ch. 287, F. S., sets forth the legislative mandate that the Division of Purchasing is to have the exclusive power to purchase `any of the various supplies, materials, goods, merchandise . . . and other personal property.' These terms have extremely broad application which evinces a legislative intent to cover the field. For example, the term `supplies' is defined in Black's Law Dictionary (4th Rev. ed. 1968) as `things other than labor, which are consumed in, but do not become a physical part of' the finished product. `Materials' is defined as the `substance or matter of which anything is made.' Further, the phrase `and other personal property' under the concept of ejusdem generis
includes all materials included within the usual definition of the specific terms set forth in s. 287.012(2). See State ex rel. Soodhalter v. Baker, 248 So.2d 468 (Fla. 1971), and Arnold v. Shumpert, 217 So.2d 116 (Fla. 1968). The term `resale' is defined as meaning a `second sale, or a sale at second hand; also, where a person who has sold goods or other property to a purchaser sells them again to someone else.' Black's Law Dictionary (4th Rev. ed. 1968). Further, other sections of part I, Ch. 287, F. S., manifest a legislative intent generally to place state purchasing within the control and supervision of the Division of Purchasing.
Moreover, the Division of Purchasing of the Department of General Services has construed the exception contained in s. 287.012(2), F. S., to include finished goods or items bought for retail sale to others. This administrative construction by the agency charged with the duty of administering and enforcing the statute in question is entitled to great weight and will not be overturned by a court unless clearly erroneous. Daniel v. Florida State Turnpike Authority, 213 So.2d 585 (Fla. 1968); State v. Florida Development Commission, 211 So.2d 8 (Fla. 1968); and Miller v. Brewer Co. of Fla., 122 So.2d 565 (Fla. 1960).
I therefore conclude that the Department of Corrections is not empowered by law to independently and directly purchase `commodities' or raw materials for the purpose of manufacturing new items as finished products for use by the department, or sale to other governmental agencies in the event such items are surplus to the needs of the department, and that such purchases are not excluded as a commodity purchased for resale, from the regulatory requirements of part I, Ch. 287, F. S.
Prepared by:
Craig B. Willis Assistant Attorney General