LAWSON, J.,
concurs and concurring specially.
I agree with the majority that a reversal is required in this case, but write to elaborate on why we were prepared to conflict with Phillips,[3] in hopes of aiding the Flori *801 da Supreme Court when it addresses the certified question in that case and, possibly, the similar question in this case.

Facts

Evans has a long history of sexual offense charges, beginning with a 1984 exhibition charge filed in California. Although Evans admits that offense, • the state dropped the charge after Evans skipped bail' and left California for the East coast. A similar 1989 offense was nolle prossed in Brevard County, Florida, but Evans was convicted of an exhibition offense relating to an incident in Maryland in which he exposed his genitals to an adult female in a mall parking lot. Evans admits exposing himself to multiple women, whom he did not know, over a multi-year period starting in the early 1980’s.
In 1996, Evans pled guilty to two charges in Virginia, based upon obscene phone calls that he made to a 10-year-old girl during which he solicited sex from the minor.' Evans was close to 40 years old at that time. Although Evans pled to these charges, he denies that the offenses occurred.
In 2003, in Citrus County, Florida, Evans was charged with lewd and lascivious molestation for sexually assaulting a 7-year-old girl. He was 44-years-old at the time. Although he denied the charge, and it was later dropped, he made incriminating statements while masturbating in the police interrogation room after being taken into custody for the offense (apparently, he did not know that he was under surveillance at the time, although he was' “so engrossed in his thoughts and actions that it appeared he had no concern that someone could walk back in the room and catch him in the act of touching himself.”)
He made more incriminating statements when law enforcement later placed Evans’ girlfriend in the interview room with him. Apparently unaware he was under surveillance, Evans stated he did not believe law enforcement had any evidence against him and would not put the child on the stand to testify against him. He planned to deny everything and advised his girlfriend to do the same. He then admitted to her that he had removed the child’s clothes and panties and touched her “in the wrong place.” He wanted to have sexual intercourse with the child, would do whatever he wanted sexually with a child, and “does not care.” Evans then demanded that his girlfriend perform oral sex on him in the interrogation room while continuing to talk about the child. He also stated that he had masturbated in the woods while watching children at the bus stop.
Evans was also charged with failing to register as a sex offender in 2003, and was convicted of this charge and sentenced to a short term in prison, followed by probation. After his release from incarceration, Evans violated his probation and was sentenced to 24 months in the Department of Corrections on January 4, 2006. The sentencing order stated that the sentence was “with credit time served,” but did not specify the amount of that credit. At the time of his sentencing, Evans did not seek to clarify the amount of credit being awarded.
Eight months later, on August 24, 2006, Evans filed a motion to clarify or correct the amount of credit to which he was entitled. The motion averred that Evans had spent from January 28, to November 21, 2003 in the Citrus County jail on the charge and had spent from November 21, 2003 to October 20, 2004 in the Department of Corrections (“DOC”) thereafter. The motion further explained that although DOC had given him credit for 327 days’ time against the 24-month sentence, he should have been credited with 644 days’ time served on the date of his sentencing. According to the motion, the State stipulated that the 644-day calcula *802 tion was correct.[4] Accepting the 644-day figure as correct, this means that Evans would have had approximately two months and 24 days left to serve on his new 24-month sentence as of the date of sentencing on January 4, 2006.
On August .28, 2006, the trial court granted Evans’ motion, awarding credit for 644 days’ time served against the 24-month sentence. After receipt of the trial court’s order, on September 5, 2006, the State initiated Ryee Act proceedings against Evans, relying on section 394.9135, Florida Statutes. That statute provides:
(1) If the anticipated release from total confinement of a person who has been convicted of a sexually violent offense becomes immediate for any reason, the agency with jurisdiction shall upon immediate release from total confinement transfer that person to the custody of the Department of Children and Family Services to be held in an appropriate secure facility.
(2)Within 72 hours after transfer, the multidisciplinary team shall assess whether the person meets the definition of a sexually violent predator. If the multidisciplinary team determines that the person does not meet the definition of a sexually violent predator, that person shall be immediately released. If the multidisciplinary team determines that the person meets the definition of a sexually violent predator, the team shall provide the state attorney, as designated by s. 394.913, with its written assessment and recommendation within the 72-hour period or, if the 72-hour period ends after 5 p.m. on a working day or on a weekend or holiday, within the next working day thereafter.
(3) Within 48 hours after receipt of the written assessment and recommendation from the. multidisciplinary team, the state attorney, as designated in s. 394.913, may file a petition with the circuit court alleging that the person is a sexually violent predator and stating facts sufficient to support such allegation. If a petition is not filed within 48 hours after receipt of the written assessment and recommendation by the state attorney, the person shall be immediately released, except that, if the 48-hour period ends after 5 p.m. on a working day or on a weekend or holiday, the petition may be filed on the next working day without resulting in the person’s release. If a petition is filed pursuant to this section and the judge determines that there is probable cause to believe that the person is a sexually violent predator, the judge shall order the person be maintained in custody and held in an appropriate secure facility for further proceedings in accordance with this part.
(4) The provisions of this section are not jurisdictional, and failure to comply with the time limitations, which results in the release of a person who has been convicted of a sexually violent offense, is not dispositive of the case and does not prevent the state attorney from proceeding against a person otherwise subject to the provisions of this part.
The State complied with the timeline and procedure set forth in this portion of the Jimmy Ryce Act, which the parties refer to as the “recapture provision.”
Evans challenged the commitment proceedings by filing a motion to dismiss, raising the same legal argument now raised on appeal. Ultimately, after the trial judge denied Evans’ motion to dis *803 miss, Evans admitted his prior convictions for sexually violent offenses; admitted that he suffers from a mental abnormality or personality disorder that makes him likely to engage in acts of sexual violence if not confined; and, admitted that he otherwise met the criteria for civil commitment under the Ryce Act. Evans admitted all allegations of the petition after being assured by the State that he would still be able to challenge the denial of his motion to dismiss on appeal. This occurred shortly before the scheduled trial, , after Evans’ own expert witnesses reported that they were unable to dispute the State’s allegation that Evans met the criteria for commitment. These witnesses had been prepared to testify on behalf of Evans, until some additional information about him came to light.[5] Evans announced that he was waiving trial and admitting the State’s allegations only because he had determined it to be in his best interest to do so, but still maintained that he disagreed with the allegations. This appeal followed.

Analysis

I preface this analysis by noting that the court in Larimore,[6] was simply “interpreting] the Involuntary Civil Commitment of Sexually Violent Predators Act,” Larimore, 2 So.3d at 103, and seeking to “give effect to legislative intent, which is the polestar that guides the court in statutory construction.” Id. at 106 (citation omitted). It is, of course, beyond “well-settled” that courts should look no further than the plain language of an unambiguous statute to construe that statute,, and that “the statute’s plain and ordinary meaning must control, unless this leads to an unreasonable result or a result clearly contrary to legislative intent.” State v. Burris, 875 So.2d 408, 410 (Fla.2004). Here, the State followed the plain language of this unambiguous statute to the letter. Ideally, this simple observation would end the inquiry. But, I now turn to Larimore.
The Larimore court began its analysis by observing that the Ryce Act “is predicated on the underlying premise that the individual is in custody when the initial steps are taken in the commitment process[.]”. Id. at 109. This is certainly an accurate observation. From this observation, the court reasoned that the legislature intended that the commitment process could never be initiated after an inmate was released from custody. Id. at 111. Although not beyond debate (as should be obvious from the dissent in Larimore ),[7] this is certainly a reasonable reading of the Act.
From this starting point (finding an “in custody” requirement for initiating Ryce Act proceedings), the court further reasoned that the legislature also intended that the inmate be in “lawful custody” as a precondition to initiation of Ryce Act proceedings. Id. at 110-11. Key to this determination was the court’s focus on due process considerations. See id. at 116 (“In accordance with our precedent, we must read the provisions of the Act consistent with basic tenets of fairness and due process.”) (citation omitted). This is obviously a justifiable concern. Otherwise, for example, the State could literally kidnap and confine an individual with no legal justifi *804 cation to meet the “in custody” requirement found by the court in Larimore.
Were I writing on a clean slate, my preference would be to interpret the statute in accordance with its plain language (for, it plainly does not require that an individual be in lawful custody as a precondition to the commencement of Ryce Act proceedings), and to address the due process concern by recognizing that anyone for whom application of the Act as it is written would violate due process could raise an as-applied constitutional challenge as a defense to application of the Act. Cf. People v. Wakefield, 81 Cal.App.4th 893, 97 Cal.Rptr.2d 221 (2000); People v. Hedge, 72 Cal.App.4th 1466, 86 Cal.Rptr.2d 52, 61 (1999) (holding that the “unambiguous language” of the Sexually Violent Predators Act “contains no requirement [that] a defendant’s custody be ‘lawful’ at the time such petition is filed, only that the person alleged to be a [sexually violent predator] be in [actual] ‘custody under the jurisdiction of the [DOC].’ ”). As it stands, though, we are bound by the holding in Larimore that the Act only allows the state to initiate a Ryce Act proceeding against an individual who is in “lawful custody” when the proceeding is started.
Finally, the Larimore court was very careful to define unlawful custody narrowly, based upon the facts before it. As the court explained:
In this case Larimore’s entire resentenc-ing was unlawful. Thus, we do not reach the question of whether section 394.9135, Florida Statutes, would allow the State to take steps to initiate a commitment proceeding against a person who while in lawful custody obtains an order for immediate release for any reason. That issue is not before us.
Id. at 117 n. 8.[8] Addressing a question left unanswered by the Larimore court, I would hold that the state can use the recapture provision (section 349.9135, Florida Statutes) to lawfully begin commitment proceedings against an inmate who is entitled to immediate release upon processing of an order awarding additional credit for time served. I reach this conclusion for a number of reasons.
First, this is the only interpretation of the Act consistent with its plain language. See Holly v. Auld, 450 So.2d 217, 219 (Fla.1984) (“ ‘[W]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.’”) (quoting A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157, 159 (1931)). It was also explained in Holly that:
[C]ourts of this state are “without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications .... [because to] do so would be an abrogation of legislative power.”
Id. (quoting Am. Bankers Life Assurance Co. of Fla. v. Williams, 212 So.2d 777, 778 (Fla. 1st DCA 1968)).
Second, this is the only interpretation of the Act that gives meaning and effect to the recapture provision. As explained by Judge Cope in Washington v. State, 866 So.2d 725 (Fla. 3d DCA 2004):
Section 394.9135 establishes the procedure where the anticipated release of an inmate becomes immediate for any reason. Id. § 394.9135(1). The classic ex *805 ample of such a release would be in a situation in which the defendant has been resentenced to a shorter sentence, or has been granted additional credit for time served.
Id. at 727 (Cope, J., specially concurring) (emphasis added). As argued by the State, Evans’ argument that a person’s custody can be retroactively rendered unlawful by a judicially mandated change in the person’s release date would render section 394.9135 meaningless in virtually all cases where a court ruling results in the “immediate release” of the inmate. This, in turn, would render section 394.9135 meaningless in most of the cases for which the statute appears to have been enacted. As recognized in Larimore, one of the more ‘“basic rule[s] of statutory construction ... [is] that the Legislature does not intend to enact useless provisions, and courts should avoid readings that would render part of a statute meaningless.’ ” Larimore, 2 So.3d at 114 (quoting State v. Goode, 830 So.2d 817, 824 (Fla.2002)).
Third, I believe that labeling Evans’ confinement as “unlawful” (for purposes of the Ryce Act) based upon an earlier theoretical release date on these facts ignores the legal concept of waiver. Clearly, a criminal defendant can lawfully spend more time incarcerated than he or she otherwise could have spent incarcerated by waiving credit for time served. See, e.g., Johnson v. State, 60 So.3d 1045 (Fla.2011). In the jail credit context, that waiver must be knowing and voluntary to be permanent. Id. But, a legal right can also be waived by simply failing to act. See, e.g., State v. Nelson, 26 So.3d 570, 576 (Fla.2010) (noting that “[a]s with other rights that constitute a personal privilege, a defendant may waive his or her right to a speedy trial” and finding waiver where defendant failed to file a notice of expiration of speedy trial after earlier moving for a continuance); also cf. Oxendine v. State, 852 So.2d 286, 287 (Fla. 5th DCA 2003) (finding that issue sought to raised by criminal defendant “was waived” by entering a plea and then failing to file a “timely 3.850 motion alleging involuntary plea or based upon ineffective assistance of counsel.”).
In this ease, had Evans never filed a motion asserting entitlement to additional jail credit — and simply finished his sentence through the release date originally calculated by the Department of Corrections — one should conclude that he waived any additional credit by serving out the entirety of the sentence and never asserting the claim. That, in my view, would constitute a valid legal waiver, and therefore would not render his incarceration illegal beyond the theoretical “could have been” release date (that would have applied had he timely asserted the claim for additional credit). That same analysis should apply to a delayed assertion of the right as well. In other words, Evans waived the issue (as he had a right to do) until he asserted the claim. But his waiver beyond the theoretical “could have been” release date should not render his incarceration beyond that date unlawful— because it was based upon Evans’ own waiver of the credit.
Fourth, interpreting the recapture period as applying to Evans on these facts avoids the unreasonable result of allowing a sexually violent predator (from whom society needs protection) from “gaming the system” in a manner that deprives the state of its ability to initiate Ryce Act proceedings. As explained by Judge Al-tenbernd in Phillips:
Because a motion under rule 3.800(a) can be filed at any time and because, rightly or wrongly, we essentially permit de novo review of jail and prison credit under this rule, a defendant’s attorney is *806 well advised to assure there is an unpre-served error in jail or prison credit when a client may be subject to civil detention. Once the error is rendered in the sentence, the defendant need only wait until the final portion of his sentence to file a motion under rule 3.800(a) to guarantee that the error will be corrected at a point that will divest the Department of Children and Family Services from jurisdiction. I see no reason why this outcome should be required as a matter of law.
Id. at 958 (Altenbernd, J., concurring in part and dissenting in part). But for the Ryce Act consequences in this case, it would have been in Evans’ interest to have the amount of jail credit clarified at the time of sentencing. Had he done so, of course, the State most likely would have initiated Ryce Act proceedings against Evans immediately, avoiding any issue regarding whether he was “legally detained” at the time.
A final and related reason for interpreting the recapture provision as applying to Evans is that this is the only interpretation consistent with the primary purpose of the Act itself. See Reeves v. State, 957 So.2d 625, 629 (Fla.2007) (“ ‘[Statutory enactments are to be interpreted so as to accomplish rather than defeat their purpose.’ ”) (quoting Lewis v. Mosley, 204 So.2d 197, 201 (Fla.1967)). The well-recognized purpose of the Ryce Act is to “protect society from sexually violent predators.” Parole Comm’n v. Smith, 896 So.2d 966, 968 (Fla. 2d DCA), rev. denied, 911 So.2d 793 (Fla.2005); see also Anderson v. State, 93 So.3d 1201, 1210 (Fla. 1st DCA 2012 (Padovano, J., concurring) (“The purpose of the Jimmy Ryce Act is to isolate and treat persons who are presently dangerous.” (emphasis in original); State v. Ducharme, 881 So.2d 70, 74 (Fla. 5th DCA 2004) (‘“[t]he purpose of the Act is to protect society from repeat acts of predatory sexual violence’ ”) (quoting Sirmons v. Regier, 846 So.2d 1151, 1153 (Fla. 2d DCA 2003); State v. Kobel, 757 So.2d 556 (Fla. 4th DCA 2000) (“The main purpose of the Act is to prevent ‘sexually violent predators’ from being released from incarceration directly into the general population.”) (citations omitted); § 394.910, Fla. Stat. (2006) (stating that the Act is aimed at “a small but extremely dangerous number of sexually violent predators”) (emphasis added).
Construing the Act as allowing an extremely dangerous sexually violent predator to avoid the recapture provision of the Act and secure his release into society by delaying clarification of his time-served credit would be patently inconsistent with the primary purpose of the Act.
For these reasons, I believe that the Act should be interpreted in a manner consistent with the trial court’s ruling in this case.

. In re Commitment of Phillips, 69 So.3d 951 (Fla. 2d DCA 2010), approved, 74 So.3d 1084 (Fla.2011).

. Although agreed to by the State, the calculation does not appear to be correct. Using the dates supplied by Evans in his motion, it appears that the time-served calculation should have yielded 631 days, rather than the stipulated 644 days.

. The record contains no hint as to the nature of this additional information.

. Larimore v. State, 2 So.3d 101 (Fla.2008).

. In a very short dissent, Justice Wells noted his agreement with the "well-reasoned” decision of the First District "which correctly applied the statute as intended by the Legislature.” Id. at 117 (Wells, J., dissenting) The First District had concluded that the Ryce Act did not contain an "in custody” requirement. See Larimore v. State, 917 So.2d 354 (Fla. 1st DCA 2005), quashed, 2 So.3d 101 (Fla.2008).

. It is this limiting language in Larimore itself which underpinned our initial conclusion that the result reached by the Second District in Phillips was not compelled by the holding in Larimore.