[No. D031243. Fourth Dist., Div. One. June 23, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
MATTHEW HARVEY HEDGE, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.

## COUNSEL

Patrick M. Ford, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert Anderson, Acting Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Rhonda L. Cartwright-Ladendorf and Bradley A. Weinreb, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

HUFFMAN, J.—Matthew Harvey Hedge appeals from a judgment ordering his two-year commitment to the custody of the state Department of Mental Health (DMH) following a jury finding he is a sexually violent predator (SVP) within the meaning of the Sexually Violent Predators Act (the Act) (Welf. & Inst. Code, § 6600 et seq.).[2] He contends the trial court lacked jurisdiction to proceed on a second petition filed in 1998 to determine whether he is a person the Act defines as an SVP because the proceeding involving his first petition filed in 1996 is still pending review before our Supreme Court (*People* v. *Hedge* (1997) 56 Cal.App.4th 773 [65 Cal.Rptr.2d 693], review granted Oct. 29, 1997 (S063954) (*Hedge I*)) and because he was not serving a valid parole revocation term at the time these current proceedings were instituted against him. Hedge also claims various instructional and evidentiary errors require reversal of his commitment and the SVP finding.[3]

In the published portion of this opinion, we shall conclude the trial court had jurisdiction to proceed on Hedge's second filed petition due to the nature of the commitment proceedings described by the Act which focus on the current mental condition and dangerousness of a potential SVP, permitting

[2] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[3] In his reply brief, Hedge concedes that his constitutional challenges to the Act raised in his opening brief regarding violations of due process based on the definition of "diagnosed mental disorder" and volitional impairment, of equal protection and of ex post facto laws have been resolved against him by our Supreme Court in *Hubbart* v. *Superior Court* (1999) 19 Cal.4th 1138 [81 Cal.Rptr.2d 492, 969 P.2d 584]. Similarly, Hedge's double jeopardy claim raised in his opening brief is impliedly conceded by his acknowledgement in his reply brief that the Act does not impose liability or punishment for criminal conduct. Moreover, it is well settled that double jeopardy principles do not apply to civil commitment proceedings because they are not penal in nature. (*People* v. *Robinson* (1998) 63 Cal.App.4th 348, 350-352 [74 Cal.Rptr.2d 52]; *People* v. *Superior Court* (*Williams*) (1991) 233 Cal.App.3d 477, 486-487 [284 Cal.Rptr. 601].)

the initiation of such proceedings "whenever" the potential SVP is scheduled to be released from the custody of the state Department of Corrections (DOC). (§ 6601, subd. (a).) In the unpublished portions, we reject Hedge's remaining contentions of error. Accordingly, we affirm the judgment.

BACKGROUND

*Summary of the Act*

The Act, contained in section 6600 et seq., provides for the continued confinement in the custody of the DMH of those persons identified as SVP's before they have completed their prison or parole revocation terms.[4] The Act's uncodified purpose clause states: " 'The Legislature finds and declares that a small but extremely dangerous group of sexually violent predators that have diagnosable mental disorders can be identified while they are incarcerated. These persons are not safe to be at large and if released represent a danger to the health and safety of others in that they are likely to engage in acts of sexual violence. The Legislature further finds and declares that it is in the interest of society to identify these individuals prior to the expiration of their terms of imprisonment. It is the intent of the Legislature that once identified, these individuals, if found to be likely to commit acts of sexually violent criminal behavior beyond a reasonable doubt, be confined and treated until such time that it can be determined that they no longer present a threat to society. [¶] The Legislature further finds and declares that while these individuals have been duly punished for their criminal acts, they are, if adjudicated sexually violent predators, a continuing threat to society. The continuing danger posed by these individuals and the continuing basis for their judicial commitment is a currently diagnosed mental disorder which predisposes them to engage in sexually violent criminal behavior. It is the intent of the Legislature that these individuals be committed and treated for their disorders only as long as the disorders persist and not for any punitive purposes.' " (Historical Note, 73D West's Ann. Welf. & Inst. Code (1998 ed.) foll. § 6600, pp. 249-250.)

The Act defines an SVP as "a person who has been convicted of a sexually violent offense against two or more victims for which he or she

---

[4]Although our Supreme Court in *Hubbart* has provided a thorough review of the statutory scheme comprising the Act (see *Hubbart* v. *Superior Court, supra,* 19 Cal.4th at pp. 1143-1149), because certain sections as well as the general nature of the Act are relevant to the issues in this case, we repeat the pertinent provisions here for the convenience of the reader.

received a determinate sentence[5] and who has a diagnosed mental disorder[6] that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a).)

Under section 6601, if the director of the DOC determines that an inmate may be an SVP, the director must refer the inmate for an initial screening, which includes evaluation by two practicing psychiatrists or psychologists in accordance with a standardized assessment protocol, commenced at least six months before the inmate's scheduled release date.[7] (§ 6601, subds. (a), (b), (c) & (d).) If both evaluators conclude that the inmate "has a diagnosed mental disorder such that he or she is likely to engage in acts of sexual

---

[5]"A 'sexually violent offense' refers to certain enumerated sex crimes 'committed by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person.' (§ 6600, subd. (b), citing Pen. Code, §§ 261, subd. (a)(2) [rape of non-spouse], 262, subd. (a)(1) [rape of spouse], 264.1 [rape in concert], 286 [sodomy], 288, subds. (a) & (b) [lewd acts upon children under age 14], 288a [oral copulation], 289, subd. (a) [sexual penetration by foreign object].)" (*Hubbart* v. *Superior Court, supra*, 19 Cal.4th at p. 1145.)

For purposes of the Act, sexually violent offenses may also include a finding of not guilty by reason of insanity for an offense described in the Act, a conviction leading to a finding that the person was a mentally disordered sex offender, a conviction in another state of an offense that includes all the elements of an offense described in the Act, and a conviction before July 1, 1977, of an offense enumerated in the Act, even if the offender did not receive a determinate sentence for that crime. (§ 6600, subd. (a), as amended by Stats. 1996, ch. 462, § 4, eff. Sept. 13, 1996.)

[6]Although a "[d]iagnosed mental disorder" is not fully defined under the Act, such condition is stated to "include . . . a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others." (§ 6600, subd. (c).)

[7]The six-month time period did not apply during the first year the Act was operative. (§ 6601, subd. (j).) Further, if an inmate is received by the DOC with less than nine months to serve, the director may refer the person for evaluation "at a date that is less than six months prior to the inmate's scheduled release date." (§ 6601, subd. (a).)

In addition, as noted in *Hubbart*, "[s]teps may be taken to postpone the release of a suspected SVP so that a mental evaluation and probable cause determination can occur. An inmate referred to the [DMH] under section 6601, subdivision (b) may be ordered to 'remain in custody for no more than 45 days for full evaluation . . . unless his or her scheduled date of release falls more than 45 days after referral.' (§ 6601.3.) If such 'parole hold' will expire before a probable cause hearing can otherwise occur under section 6602, the superior court may be asked to review the petition and hold a probable cause hearing on an 'urgency' basis. (§ 6601.5.) The versions of sections 6601.3 and 6601.5 cited here were enacted recently (Stats. 1998, ch. 19, §§ 1, 2), after prior versions of the same statutes expired by their own terms. (Stats. 1996, ch. 4, §§ 2 & 3.)" (*Hubbart* v. *Superior Court, supra*, 19 Cal.4th at p. 1146, fn. 10.)

"The standardized assessment protocol shall require assessment of diagnosable mental disorders, as well as various factors known to be associated with the risk of reoffense among sex offenders . . . [including] criminal and psychosexual history, type, degree, and duration of sexual deviance, and severity of mental disorder." (§ 6601, subd. (c).)

violence without appropriate treatment and custody," the DMH transmits a request for a petition for commitment under the Act to the county in which the alleged SVP was last convicted, with copies of the evaluation reports and other supporting documents. (§ 6601, subds. (d), (h) & (i).) If the designated county's attorney concurs in the request, a petition for commitment is filed in that county's superior court. (§ 6601, subd. (i).)

Once filed, the superior court is required to hold a hearing to determine whether there is "probable cause" to believe that the individual named in the petition is likely to engage in sexually violent predatory[8] criminal behavior upon his or her release.[9] (§ 6602, as amended by Stats. 1996, ch. 4, § 4 & by Stats. 1998, ch. 19, § 3.) If probable cause is found, the judge "shall" order that a trial be conducted "to determine whether the person is, by reason of a diagnosed mental disorder, a danger to the health and safety of others in that the person is likely to engage in acts of sexual violence upon his or her release . . . ." (§ 6602.) If, however, the court finds no probable cause, the court must dismiss the petition. (§ 6602.)

The person subject to a trial under the Act is to remain in custody in a secure facility until the trial is completed. (§ 6602.) That person is entitled to trial by jury, the assistance of counsel, the right to retain experts or professional persons to perform further evaluations, and access to relevant medical and psychological reports. (§ 6603, subd. (a).) The trier of fact must determine beyond a reasonable doubt whether the person named in the petition is in fact an SVP. (§ 6604.) If there is any reasonable doubt, the person is released at the expiration of his or her prison term. (§ 6604.) If the person is determined to be an SVP, he or she shall be committed to the custody of the DMH for two years "for appropriate treatment and confinement in a secure facility . . . ," subject to annual review and extension of commitment if the diagnosed mental disorder and the consequent danger to the community persist. (§§ 6604, 6605.)

The committed SVP is entitled to the appointment of an expert and to review all records for the annual review and, unless waived, is entitled to a show cause hearing in the superior court to determine if the person's condition has so changed that he or she would not be a danger to the health and safety of others if released from confinement. (§ 6605, subds. (a), (b) & (c).) If the court so finds, the SVP is entitled to a full trial with the same

---

[8]The Act defines "predatory" as "an act . . . directed toward a stranger, a person of casual acquaintance with whom no substantial relationship exists, or an individual with whom a relationship has been established or promoted for the primary purpose of victimization." (§ 6600, subd. (e).)

[9]The alleged SVP is entitled to the assistance of counsel at this hearing. (§ 6602.)

rights and constitutional protections afforded at the initial commitment proceedings. (§ 6605, subd. (d).) If the ruling is in favor of the SVP, he or she is immediately unconditionally discharged.[10] (§ 6605, subd. (e).) Additionally, if at any time the DMH has reason to believe the committed person is no longer an SVP, it must seek judicial review of the commitment. (§ 6605, subd. (f).)[11]

Finally, the committed SVP must be provided treatment for his or her diagnosed mental disorder, whether or not it is found the SVP is amenable to treatment. (§ 6606, subds. (a) & (b).) The right to such treatment does not mean it must be potentially successful, but that it "shall be consistent with current institutional standards for the treatment of sex offenders . . . ." (§ 6606, subds. (b) & (c).)

## FACTUAL AND PROCEDURAL HISTORY

On October 25, 1989, Hedge pleaded guilty to two counts of committing forcible lewd acts on a child (Pen. Code, § 288, subd. (b)) and to two counts of committing a lewd act on a child (Pen. Code, § 288, subd. (a)). For these sex crimes which involved more than one victim, Hedge was sentenced to prison on December 14, 1989, for a total determinate term of 12 years. In anticipation of his pending release on parole,[12] the DMH wrote the San Diego District Attorney's Office (D.A.'s Office) that Hedge had been identified as an SVP and attached to its letter the reports of two psychiatric professionals who concurred, after separate evaluations, that Hedge fit the Act's statutory qualifications.

Subsequently, on June 25, 1996, the People filed the first petition, which included the above referenced psychiatric reports, requesting the superior court to commence proceedings under the Act to determine whether Hedge

[10]If the trier of fact finds beyond a reasonable doubt against the SVP, section 6605, subdivision (e) provides that "the term of commitment of the person shall run for a period of two years from the date of this ruling." Section 6604.1 provides, however, that the two-year term of any extended commitment "shall be from the date of the termination of the previous commitment." (Added by Stats. 1998, ch. 19, § 5, eff. Apr. 14, 1998; amended by Stats. 1998, ch. 961, § 7, eff. Sept. 29, 1998, inoperative eff. July 1, 2001; & § 8, eff. Sept. 29, 1998, operative July 1, 2001.)

[11]The committed SVP can also be placed on conditional release upon a finding he or she is not likely to engage in sexually violent predatory criminal acts while under community supervision and treatment. (§ 6607.) Anytime after a year from the initial commitment order, the SVP may petition for conditional relief without the recommendation of the director of DMH. (§ 6608, subds. (a) & (c).)

[12]Hedge's trial counsel filed a supplemental statement of facts below that states Hedge was originally paroled November 22, 1995, but reincarcerated in March 1996 for a parole violation. It was during his continuing custody for various parole violations and holds that Hedge was referred for evaluation as a potential SVP.

should be committed as an SVP. Hedge demurred to the petition on the ground it failed to state a cause of action because the Act was unconstitutional on its face and as applied to him. The trial court agreed and sustained the demurrer without leave to amend, dismissing the petition. The People appealed the dismissal, which was consolidated for review with six other SVP petitions dismissed on the same constitutional grounds. After considering the Act in light of its legislative history and the recent United States Supreme Court decision in *Kansas* v. *Hendricks* (1997) 521 U.S. 346 [117 S.Ct. 2072, 138 L.Ed.2d 501] (*Hendricks*), we reversed that consolidated action in *Hedge I, supra,* 56 Cal.App.4th 733. *Hedge I* was then granted review October 29, 1997, by the California Supreme Court.[13]

In the meantime, Hedge was returned to the jurisdiction of the DOC after the first petition was dismissed for release on parole. Subsequently, Hedge's parole was revoked by the DOC. Sometime before his recalculated 1997 parole release date, the DOC again referred Hedge for evaluation as an SVP. Based on new evaluations performed by the same psychotherapists who evaluated him in 1996, the DMH wrote to the D.A.'s Office again identifying Hedge as a potential SVP under the Act. The new reports dated December 12 and 23, 1997, incorporated the psychotherapists' earlier 1996 reports and concluded Hedge currently had the requisite "diagnosed mental disorder" and dangerousness to qualify as an SVP. On January 28, 1998, the People filed a second/current petition, attaching the new and old evaluations and a declaration of counsel, which requested the superior court commence proceedings to determine whether Hedge should be committed as an SVP.

Before the probable cause hearing was held, the trial court entertained Hedge's demurrer/motion to dismiss on grounds the court lacked jurisdiction to proceed because the petition was the "same cause of action," "pending between the same parties," and was identical to that in *Hedge I* except for the addition of new evaluations. (Code Civ. Proc., § 430.10, subd. (c).) In the alternative, Hedge argued the instant proceedings should be held in abeyance because of the constitutional issues pending in *Hedge I*. The court overruled the demurrer and denied the motion to dismiss, accepting the People's

---

[13]Although *Hubbart* appears to have resolved the constitutional issues raised in *Hedge I*, that case has not yet been transferred or remanded to this court in light of *Hubbart*. In addition to *Hedge I*, other decisions addressing the same constitutional questions concerning the Act are still pending review before our Supreme Court: *People* v. *Putney* (1997) 57 Cal.App.4th 739 [67 Cal.Rptr.2d 283], review granted Dec. 23, 1997 (S065144); *Garcetti* v. *Superior Court* (1996) 49 Cal.App.4th 1533 [57 Cal.Rptr.2d 420] review granted Feb. 5, 1997 (S057336); *People* v. *Superior Court* (*Cain*) (1996) 49 Cal.App.4th 1164 [57 Cal.Rptr.2d 296], review granted Feb. 5, 1997 (S057272); each has been reprinted without change in the Review Granted Opinions Pamphlet to permit tracking pending review and disposition by the Supreme Court.

position that, constitutional issues aside, *Hedge I* focused on Hedge's then-mental condition and dangerousness which was separate from his current mental condition and dangerousness alleged in this second petition. The court thereafter found probable cause to hold Hedge for trial as a potential SVP. (§ 6602.)

At trial, the People presented the testimony of the two psychologists, Drs. L. C. Miccio-Fonseca and Amy Phenix, who had performed the 1996 and 1997 clinical evaluations, and who opined Hedge currently was an SVP under the Act. Each found Hedge had diagnosable mental disorders that affected his emotional or volutional capacity and predisposed him to engage in sexually violent conduct.

Dr. Theodore Donaldson, a clinical psychologist, testified on behalf of Hedge[14] that the diagnostic procedures used by Miccio-Fonseca and Phenix were unreliable and that any impairment or predisposition Hedge may have had in 1989 no longer existed, and thus he did not qualify as an SVP. Forensic Psychologist Meredith Friedman, who had performed the psychological evaluation for the defense before Hedge was sentenced in his 1989 criminal case, concurred with Donaldson that Hedge did not qualify as an SVP. She opined Hedge had made positive changes in the last decade through his treatment and that it was not "more likely than not" he would become an SVP in the future. The jury determined otherwise.

DISCUSSION

I

*Jurisdiction*

At the outset, we note the facts below conflicted as to whether Hedge's parole was revoked for one year under Penal Code section 3056 on the ground he needed psychiatric treatment within the meaning of section 2616, subdivision (a)(7), of title 15 of the California Code of Regulations (the *Regulation*) after his first SVP petition was dismissed or whether he remained on parole from July 22, 1996, until he was arrested September 23, 1997, for a parole violation and then reincarcerated. His trial counsel made both representations to the court. Either way, Hedge was in the custody of the DOC at the time the second SVP evaluation was performed and the

---

[14]Hedge's wife since February 14, 1998, also testified on his behalf. She began dating Hedge in May 1997, and moved in with him and his mother in September 1997, five days before his arrest for a parole violation. She felt Hedge was attracted to women and not to children.

petition filed. Because the jurisdictional issues raised by Hedge and addressed by both parties on appeal assume he was in custody due to revocation under the Regulation, we accept such premise for purposes of our discussion of those issues.

A. *Effect of pending appeal in Hedge I.*

 Relying on the long-established principle that upon the filing of a notice of appeal by either party in a civil action, jurisdiction vests in the appellate court until the appeal is determined and remittitur issues, Hedge contends, as he did below, that the trial court lacked jurisdiction to proceed on the second/current petition filed under the Act because his first petition which alleged the "same cause of action" remained on appeal before the California Supreme Court. (See Code Civ. Proc., §§ 430.10, 916.) In the alternative, he argues that even if the trial court found this petition encompassed a different action than in *Hedge I*, it should have held this petition in abeyance under Code of Civil Procedure section 430.10, subdivision (c) because the same constitutional challenges and issues were pending in *Hedge I*. We conclude, as did the court below, that due to the nature of proceedings under the Act the second petition was properly before the trial court as a new action even though such involved similar issues as in *Hedge I*.

In reversing the judgment of dismissal in *Hedge I*, we remanded the matter to the trial court with directions to vacate its orders sustaining his demurrer to the petition and ordering him released and to enter new orders overruling his demurrer insofar as it was based on the constitutional violations addressed in our opinion, to direct his interim detention in accordance with the relevant provisions of the Act pending further proceedings, and to conduct the further proceedings specified in the Act in a manner consistent with our opinion. Before our directions could be carried out, *Hedge I* was granted review by the California Supreme Court. As noted above, the record is unclear as to the dates and circumstances of Hedge's periods of actual custody with the DOC between the trial court's dismissal of his first SVP petition and the filing of the second. The supplemental statement of facts submitted by his counsel on the demurrer/motion to dismiss the second petition represented Hedge was released on parole in July 1996 and not again under the custody of the DOC until he was arrested for a parole violation in September 1997. If these facts are taken as true, Hedge's situation is entirely different than argued below and on appeal that this petition was based on the same identical facts and cause of action as in the first petition.

Even if we assume Hedge's parole was immediately revoked for a year under the Regulation, and that the facts in the second petition were basically

the same except for new evaluations by the same psychologists who had performed the evaluations for the first petition, we still conclude the court had jurisdiction to entertain the second petition.

As the People point out, the Act provides that "[w]henever" the DOC determines that a qualifying individual in its custody may be an SVP, the DOC shall refer that person for evaluation in accordance with section 6601. (§ 6601, subd. (a).) Once the referral is made, if the person is found to meet the criteria of section 6600, the matter is then directed to the proper designated authority in any particular county to consider filing a petition to commit the alleged SVP because of a " 'currently diagnosed mental disorder which predisposes [him or her] to engage in sexually violent criminal behavior.' " (Historical Note, 73D West's Ann. Welf. & Inst. Code, *supra*, foll. § 6600, p. 250; § 6601, subds. (d), (h) & (i).) The filing of the petition commences a series of proceedings which, if followed through, may conclude with the factual determination, by court or jury, that the person named in the petition is an SVP subject to commitment under the Act.

As the court in *Hubbart* noted, the Act viewed as a whole "is also designed to ensure that the committed person does not 'remain confined any longer than he suffers from a mental abnormality rendering him unable to control his dangerousness.' [Citation.] In general, each period of commitment is strictly limited and cannot be extended unless the state files a new petition and again proves, beyond a reasonable doubt that the person is dangerous and mentally impaired. (§ 6604.) Although committed for two years, the SVP is entitled each year to a new mental examination and to judicial review of the commitment to determine whether his condition has changed such that he no longer poses a danger to the health and safety of others. (§ 6605, subds. (a)-(c).) . . . The SVP is entitled to unconditional release and discharge if he prevails in this proceeding. (*Id.*, subd. (e).)" (*Hubbart v. Superior Court, supra*, 19 Cal.4th at p. 1177.)

The nature of the Act thus envisions a special civil commitment proceeding that is begun and then continues, changes or ends depending upon the current mental condition and dangerousness of the proposed or committed SVP at the time he or she is nearing release from the custody of the DOC. Although the same requirements or issues are involved in alleging any "cause" filed via petition under the Act, the actual facts or circumstances comprising that "cause" in a subsequent petition will necessarily be different due to the addition of new facts bearing on those issues based on the sheer passage of time which may support the release or commitment of the proposed SVP. Because of the short time periods involved for the commencement of proceedings and commitment durations and extensions under

the Act, the Legislature certainly must have recognized that active civil appeals might often still be pending when a new petition or matter concerning the same alleged SVP comes before the trial court. We thus believe the Legislature intended the trial court to have continuing jurisdiction in such special civil proceedings, as in other civil commitment proceedings (see *Conservatorship of James M.* (1994) 30 Cal.App.4th 293, 297-299 [35 Cal.Rptr.2d 567]), to consider and review new matters involving the same person even when an earlier petition or matter is pending appeal.

Hedge would have us treat this proceeding as a regular civil action rather than a special proceeding which is subject to slightly different rules once an appeal of the matter is taken. Generally, "the perfecting of an appeal stays [the] proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order . . . ." (Code Civ. Proc., § 916, subd. (a).) ■ It has been stated that: "The purpose of the rule depriving the trial court of jurisdiction in a case during a pending appeal is to protect the appellate court's jurisdiction by preserving the status quo until the appeal is decided. The rule prevents the trial court from rendering an appeal futile by altering the appealed judgment or order by conducting other proceedings that may affect it. [Citation.]" (*Betz* v. *Pankow* (1993) 16 Cal.App.4th 931, 938 [20 Cal.Rptr.2d 841].) This general rule of divestiture of jurisdiction, however, does not apply in "special proceedings" unless it is specifically made applicable by statute.[15] (*Agricultural Labor Relations Bd.* v. *Tex-Cal Land Management, Inc.* (1987) 43 Cal.3d 696, 707 [238 Cal.Rptr. 780, 739 P.2d 140]; see also Code Civ. Proc., §§ 21-23, 1063 et seq.) Moreover, notwithstanding a stay pending appeal, a trial court is not divested of its jurisdiction "to determine 'ancillary or collateral matters' which do not affect the judgment on appeal." (*Silver* v. *Gold* (1989) 211 Cal.App.3d 17, 26 [259 Cal.Rptr. 185].)

■ As the arguments before the court below and the nature of the Act show, the second petition embraced new allegations that Hedge in December of 1997 qualified as an SVP, which were in addition to the allegations in the petition filed in 1996 in *Hedge I*. The issues on appeal in *Hedge I* concerned the legal issues of whether the Act is constitutional. At the time of the motion below, Hedge had yet to raise any constitutional issues regarding the Act with respect to this second petition and the United States Supreme Court

---

[15]The Act provides no rules regarding stays when any proceeding under the Act is appealed. The judge hearing Hedge's demurrer/motion to dismiss the second petition for lack of jurisdiction due to the pendency of *Hedge I* specifically queried counsel on whether the trial court was the proper court in which to request a stay of the matter in light of the nature of these proceedings. Counsel noted he would take the matter up if the court denied his motion. Counsel did not do so.

had rendered its opinion in *Hendricks* upholding the constitutionality of a similar Kansas SVP law. Under these circumstances, we cannot say the trial court erred in finding that it had jurisdiction to proceed on the second (current) petition. Regardless of whether such petition is characterized as new or as supplemental to the first petition, we believe the nature of these special civil proceedings under the Act reflects a Legislative intent that they be exempt from the general civil rule that the perfecting of an appeal automatically divests a trial court of jurisdiction over subsequent petitions properly filed in such proceedings. Because we so hold, we do not address Hedge's alternative claim the court should have held the second petition in abeyance pending resolution of *Hedge I.*

B. *Effect of invalid parole revocation term.*

Relying on the holding in *Terhune* v. *Superior Court* (1998) 65 Cal.App.4th 864 [76 Cal.Rptr.2d 841], which held the psychiatric parole revocation procedure set forth in the Regulation is invalid, Hedge also alleges the trial court was without jurisdiction to proceed under the Act to try him as an SVP because this second petition was filed while he was "unlawfully" in the custody of the DOC. Such assertion is premised upon the ground his parole revocation term under the Regulation was improper as it was subsequently determined to be invalid by the *Terhune* decision.

Essentially, Hedge's contention, like those raised in *Garcetti* v. *Superior Court* (1998) 68 Cal.App.4th 1105 [80 Cal.Rptr.2d 724] (hereafter *Garcetti*) and in *People* v. *Superior Court (Whitley)* (1999) 68 Cal.App.4th 1383 [81 Cal.Rptr.2d 189] (hereafter *Whitley*), is whether lawful custody is a jurisdictional requirement for the filing of a petition for civil commitment under the Act. Hedge acknowledges that the courts in *Garcetti* and *Whitley* resolved the issue against him, but asserts those cases were wrongly decided. However, after carefully reviewing the reasoning in *Garcetti* and *Whitley*, we agree with those courts that the holding of *Terhune* does not negate the trial court's "jurisdiction" to proceed under the properly filed second petition to declare Hedge an SVP.

Moreover, as the People point out, Hedge did not directly challenge the validity of his custody under the Regulation by administrative appeal or petition for writ of habeas corpus. Nor did he challenge the filing of the current second petition under the Act on such grounds until this appeal. As the courts in *Garcetti* and *Whitley* determined, the unambiguous language of the Act contains no requirement a defendant's custody be "lawful" at the time such petition is filed, only that the person alleged to be an SVP be in "custody under the jurisdiction of the [DOC]." (§ 6601, subd. (a); see

*Garcetti, supra,* 68 Cal.App.4th at p. 1118; *Whitley, supra,* 68 Cal.App.4th at p. 1391.) No jurisdictional error is shown.

## II, III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Kremer, P. J., and Nares, J., concurred.

---

*See footnote 1, *ante*, page 1466.