[No. H020240. Sixth Dist. Mar. 7, 2000.]

ALLEN DOUGLAS BUTLER, Petitioner, v.
THE SUPERIOR COURT OF SANTA CRUZ COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

[No. H020554. Sixth Dist. Mar. 7, 2000.]

MICHAEL THOMAS CHEEK, Petitioner, v.
THE SUPERIOR COURT OF SANTA CRUZ COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Biggam, Christensen & Minsloff and Diana L. August for Petitioner Allen Douglas Butler.

Biggam, Christensen & Minsloff and William R. Weigel for Petitioner Michael Thomas Cheek.

No appearance for Respondent.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, George F. Hindall III and Moona Nandi, Deputy Attorneys General, for Real Party in Interest in No. H020240.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, René A. Chacón,

Bridget Billeter and Moona Nandi, Deputy Attorneys General, for Real Party in Interest in No. H020554.

## OPINION

**BAMATTRE-MANOUKIAN, Acting P. J.**—Petitioners Michael Thomas Cheek and Allen Douglas Butler were found to be sexually violent predators under the Sexually Violent Predators Act (Welf. & Inst. Code, § 6600 et seq.)[1] and were committed to the custody of the State Department of Mental Health (DMH) for two years. We affirmed those commitments in *People v. Cheek* (1999) 75 Cal.App.4th 282 [89 Cal.Rptr.2d 125], review granted December 15, 1999 (S083305),[2] and *People v. Butler* (1998) 68 Cal.App.4th 421 [80 Cal.Rptr.2d 357].[3]

Before those two-year commitments expired, the district attorney filed petitions to commit Butler and Cheek for additional two-year periods. The petitions were each supported by one evaluation from a DMH clinical psychologist. Both Butler and Cheek contend that the petitions for commitment should be dismissed because the Sexually Violent Predators Act requires the DMH conduct a "full evaluation," (§ 6601, subd. (b)), which involves *two* evaluations of the person subject to commitment (§ 6601, subd. (d)), before the district attorney may file a petition for extended commitment. We agree, and therefore in each case we will issue a writ of mandate commanding the superior court to dismiss the petition for commitment.

### BACKGROUND

#### *Sexually Violent Predators Act*

The Sexually Violent Predators Act (SVPA), adding sections 6600 through 6608 to the Welfare and Institutions Code, was enacted October 11,

---

[1] Unspecified section references are to the Welfare and Institutions Code.

[2] In *People v. Cheek, supra,* 75 Cal.App.4th 282, we held that the trial court had erred by precluding Cheek from calling and cross-examining witnesses at the annual show cause hearing (§ 6605), but that the issue was moot because Cheek's initial commitment had expired. We further held that the trial court did not abuse its discretion in denying Cheek's request for appointment of an expert.

We note that the pending appeal of Cheek's initial commitment did not preclude the trial court from proceeding on the current petition for commitment. (See *People v. Hedge* (1999) 72 Cal.App.4th 1466, 1475-1478 [86 Cal.Rptr.2d 52].)

[3] In *People v. Butler, supra,* 68 Cal.App.4th 421, we held that the trial court erred by precluding Butler from calling and cross-examining witnesses at the probable cause hearing (§ 6602), but that the error was harmless because Butler was permitted to call and cross-examine witnesses at trial. We further held that the evidence was sufficient to support Butler's commitment.

1995, effective January 1, 1996. (Stats. 1995, chs. 762 & 763.) In section 1, the Legislature set forth its findings and summarized the purpose of the new law, as follows:

"The Legislature finds and declares that a small but extremely dangerous group of sexually violent predators that have diagnosable mental disorders can be identified while they are incarcerated. These persons are not safe to be at large and if released represent a danger to the health and safety of others in that they are likely to engage in acts of sexual violence. The Legislature further finds and declares that it is in the interest of society to identify these individuals prior to the expiration of their terms of imprisonment. It is the intent of the Legislature that once identified, these individuals, if found to be likely to commit acts of sexually violent criminal behavior beyond a reasonable doubt, be confined and treated until such time that it can be determined that they no longer present a threat to society.

"The Legislature further finds and declares that while these individuals have been duly punished for their criminal acts, they are, if adjudicated sexually violent predators, a continuing threat to society. The continuing danger posed by these individuals and the continuing basis for their judicial commitment is a currently diagnosed mental disorder which predisposes them to engage in sexually violent criminal behavior. It is the intent of the Legislature that these individuals be committed and treated for their disorders only as long as the disorders persist and not for any punitive purposes." (Stats. 1995, ch. 762, § 1; *id.*, ch. 763, § 1).

A "sexually violent predator" is defined in section 6600, subdivision (a), as "a person who has been convicted of a sexually violent offense against two or more victims for which he or she received a determinate sentence and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." Sexually violent offenses, for purposes of the SVPA, are listed in section 6600, subdivision (b).

If the Director of the Department of Corrections determines that a prisoner may be a sexually violent predator (SVP), the director shall refer that person for an initial screening evaluation at least six months prior to his or her scheduled release date. (§ 6601, subds. (a) & (b).) The initial screening is performed by the Department of Corrections and the Board of Prison Terms. If "as a result of this screening it is determined that the person is likely to be a sexually violent predator," he or she is then referred to the DMH for a "full evaluation of whether the person meets the criteria in Section 6600." (§ 6601, subd. (b).)

Upon referral, the DMH evaluates the potential SVP "in accordance with a standardized assessment protocol." (§ 6601, subd. (c).) The evaluations are performed "by two practicing psychiatrists or psychologists, or one practicing psychiatrist and one practicing psychologist." (§ 6601, subd. (d).) "If both evaluators concur that the person has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody," the DMH requests that the county attorney file a petition for commitment. (*Ibid.*) "Copies of the evaluation reports and any other supporting documents shall be made available to the attorney designated by the county pursuant to subdivision (i) who may file a petition for commitment." (*Ibid.*)

██ A probable cause hearing is then held before a superior court judge. (§ 6602.) The individual named in the petition is entitled to assistance of counsel at this hearing and is permitted to call and cross-examine witnesses. (See *People v. Butler, supra*, 68 Cal.App.4th 421.) If the judge determines there is probable cause to believe that the person is likely to engage in sexually violent predatory criminal behavior upon his or her release from prison, the judge shall order that a trial be conducted "to determine whether the person is, by reason of a diagnosed mental disorder, a danger to the health and safety of others in that the person is likely to engage in acts of sexual violence upon his or her release . . . ." (§ 6602.)

The person subject to the petition is entitled to a trial by jury, the assistance of counsel and the right to retain experts or professional persons to perform further evaluations, and is entitled to have access to all relevant medical and psychological records and reports. (§ 6603, subd. (a).) A unanimous verdict is required in any jury trial. (§ 6603, subd. (d).) The burden of proof is on the state to show that the person is a sexually violent predator beyond a reasonable doubt. (§ 6604.) If it is so determined, the person shall be committed for a period of two years "to the custody of the State Department of Mental Health for appropriate treatment and confinement in a secure facility . . . ." (*Ibid.*) "[T]he person shall not be kept in actual custody longer than two years unless a subsequent extended commitment is obtained from the court incident to the filing of a new petition for commitment . . . ." (*Ibid.*)

The SVP's confinement is subject to annual review and is entitled to the appointment of an expert and review of all records. (§ 6605, subd. (a).) The SVP is entitled to an annual "show cause hearing" whereby his or her mental condition is reviewed. (§ 6605, subd. (b).) The SVP may also petition for conditional release after a year of commitment (§ 6608), and the DMH can request conditional release (§ 6607) at any time.

While confined, the SVP must be provided with treatment for his or her diagnosed mental disorder, whether or not he or she is amenable to treatment. (§ 6606, subds. (a) & (b).) The treatment "shall be consistent with current institutional standards for the treatment of sex offenders . . . ." (§ 6606, subd. (c).)

*Butler*

On May 14, 1996, Butler was found to be an SVP and committed to the custody of the DMH for a two-year period. On May 8, 1998, a few days before Butler's commitment was set to expire, the District Attorney of Santa Cruz County filed a new petition seeking to recommit Butler for another two-year period. Attached to the petition for commitment was an April 9, 1998, evaluation of defendant performed by DMH clinical psychologist Diane Imren. In her evaluation report, Dr. Imren recommended that Butler be recommitted: "It is the opinion of the treatment team that Mr. Butler has a diagnosed mental disorder . . . . Based on Mr. Butler's history, his current level of functioning and known risk factors associated with reoffense, Mr. Butler is more likely than not to engage in sexually violent criminal behavior in the future."

The trial court set the probable cause hearing (§ 6602) on the petition for recommitment for June 25, 1999, after numerous continuances related to the pending appeal in *People v. Butler, supra*, 68 Cal.App.4th 421. The district attorney moved into evidence Dr. Imren's April 9, 1998, evaluation report, as well as a June 10, 1999, addendum to that report.

Dr. Imren testified at the probable cause hearing and Butler was permitted to cross-examine her. Dr. Imren explained that Butler was in phase I of the treatment program at Atascadero State Hospital. She testified that Butler had told her he had "no intention" of going to phase II of the treatment program because "[i]t would be like admitting I have a problem."

After Butler cross-examined Dr. Imren, the district attorney requested the trial court read the two 1996 evaluation reports that supported the original petition for commitment. Butler's counsel argued that the trial court should not rely on the 1996 evaluation reports to determine Butler's current mental condition, and he further asserted that the district attorney was required to present two evaluations by separate psychologists or psychiatrists rather than the one evaluation he had presented.

The trial court ruled that it was not necessary to consider the 1996 reports and that it was not necessary for the district attorney to present two evaluations "because of the type of hearing that we have." At the end of the

probable cause hearing, Butler's counsel reiterated her argument that "they have to, present two evaluators" and moved to dismiss the petition for recommitment. The trial court denied the motion, made a finding that there was probable cause "to believe that [Butler] is an individual who is likely to engage in sexually violent predatory criminal behavior upon his release," and set a trial date of September 7, 1999. We stayed the trial date pending disposition of Butler's petition for writ of mandate.

### *Cheek*

On July 14, 1997, Cheek was found to be an SVP and committed to the custody of the DMH for a two-year period. On May 27, 1999, about six weeks before Cheek's initial two-year commitment was set to expire, the District Attorney of Santa Cruz County filed a new petition seeking to recommit him for another two-year period. The petition for commitment included an April 19, 1999, evaluation of Cheek performed by DMH clinical psychologist Dale Arnold. In his evaluation report, Dr. Arnold recommended that Cheek be recommitted: "It is the opinion of this evaluator, as well as Mr. Cheek's treatment team, that, as a result of his diagnosed mental disorder, Mr. Cheek is more likely than not to engage in sexually violent criminal behavior in the future."

The trial court held the probable cause hearing (§ 6602) on the petition for recommitment on August 20, 1999. The district attorney moved into evidence Dr. Arnold's evaluation report, and Dr. Arnold testified at the probable cause hearing. Cheek was permitted to cross-examine him.

At the end of the probable cause hearing, Cheek's counsel argued that the trial court should dismiss the petition because the district attorney was required to present two evaluations by separate psychologists or psychiatrists rather than the one evaluation presented.

The trial court did not explicitly rule on the issue whether the district attorney was required to present two evaluations. It stated: "Pursuant to Welfare and Institutions Code section 6602, and the following considerations of the petition which has been filed in this case, as well as the forensic evaluation report . . . and the testimony that the Court received here today, I find there is probable cause to believe that Mr. Cheek is likely to engage in sexually violent predator[y] criminal behavior upon his release at this time . . . ." The trial court set a trial date of November 29, 1999. We stayed the trial date pending disposition of Cheek's petition for writ of mandate.

### DISCUSSION

 Petitioners argue that the procedures for recommitment under the SVPA are the same as for an initial commitment. That is, the person must be

evaluated by two practicing psychologists or psychiatrists, and the DMH may request a petition for commitment only "[i]f *both* evaluators concur that the person has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody . . . ." (§ 6601, subd. (d), italics added.)

We have found only one published case that addresses issues relating to recommitment under the SVPA: *People v. Superior Court (Ramirez)* (1999) 70 Cal.App.4th 1384 [83 Cal.Rptr.2d 402]. *Ramirez* held that the SVPA does not require that a recommitment trial be completed before the expiration of the initial term of commitment. It is unclear whether the defendant in that case was evaluated by more than one evaluator prior to the filing of the recommitment petition; the opinion specifies simply that "[t]he petition was based on a request from the medical director of Atascadero State Hospital that [the defendant] be recommitted because the treatment staff believed that [the defendant] remained a danger to the health and safety of others and was likely to engage in sexually violent criminal behavior if discharged." (*Id.* at p. 1386.)

In construing the SVPA we apply settled rules of statutory construction. █ " 'The goal of statutory construction is to ascertain and effectuate the intent of the Legislature. [Citation.] Ordinarily, the words of the statute provide the most reliable indication of legislative intent. [Citation.] When the statutory language is ambiguous, the court may examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes. [Citations.]' [Citation.] ' "When the language is susceptible of more than one reasonable interpretation . . . , we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." ' [Citation.]" (*People v. Jefferson* (1999) 21 Cal.4th 86, 94 [86 Cal.Rptr.2d 893, 980 P.2d 441].)

█ The SVPA does not contain any explicit provisions regarding the process of recommitment. The only reference to recommitment is contained in section 6604, which provides, in pertinent part: "If the court or jury determines that the person is a sexually violent predator, the person shall be committed for two years to the custody of the State Department of Mental Health . . . and the person shall not be kept in actual custody longer than two years unless a subsequent extended commitment is obtained from the court incident to the filing of a new petition for commitment under this article . . . ."

The fact that the Legislature did not provide any specific procedures for the filing of a petition for recommitment indicates that it intended the

recommitment procedures to be the same as the procedures for the filing of an initial petition for commitment, including the requirement that the person be evaluated by *two* psychologists or psychiatrists and the requirement that the DMH make available to the designated county attorney "[c]opies of the evaluation *reports*." (§ 6601, subd. (d), italics added.) Indeed, the SVPA does not use the term "petition for recommitment," but instead refers to "the filing of *a new petition for commitment* under this article." (§ 6604, italics added.) This language indicates that the Legislature intended the procedures for obtaining a "subsequent extended commitment" to be the same as the procedures for obtaining an initial commitment. The Legislature specifically provided that the DMH may not request a petition for commitment if only one of the two evaluators concludes that the person meets the criteria for commitment under the SVPA. (§ 6601, subd. (e).) This indicates that the Legislature felt it important for two professionals to concur in their evaluations of a potential SVP's mental condition before a petition for commitment could be filed.

■ The fact that the SVPA specifically requires a "new petition for commitment" after the initial two-year term of commitment indicates that the Legislature intended the new petition to be based on the SVP's mental condition at the end of the initial two-year term. The evaluations performed at the initial commitment stage would not reflect the defendant's current mental condition. "The nature of the [SVPA] envisions a special civil commitment proceeding that is begun and then continues, changes or ends depending upon the *current* mental condition and dangerousness of the proposed or committed SVP . . . . Although the same requirements or issues are involved in alleging any 'cause' filed via petition under the Act, the actual facts or circumstances comprising that 'cause' in a subsequent petition will necessarily be different due to the addition of new facts bearing on those issues based on the sheer passage of time which may support the release or commitment of the proposed SVP." (*People* v. *Hedge, supra,* 72 Cal.App.4th 1466, 1476, italics added.)[4]

■ The People argue that the procedures specified in section 6601 do not apply to petitions for recommitment. They point out that section 6601 appears to contemplate that the person named in the petition for commitment will be "in custody under the jurisdiction of the Department of Corrections," because he or she is serving a determinate prison sentence or because his or her parole has been revoked. (§ 6601, subd. (a).) The fact that some of the preliminary procedures would not apply to an extended commitment does not mean that none of the statutory requirements apply. Clearly, the person will not be in custody under the jurisdiction of the Department of Corrections at the time the recommitment process begins; rather, the person will be

---

[4] In *Hedge*, the court held that the trial court had jurisdiction over an SVPA petition even though a previously filed petition was still pending before the California Supreme Court.

in custody under the jurisdiction of the DMH. Thus, there will be no need for the initial determination by the Director of the Department of Corrections that the person "may be a sexually violent predator" (§ 6601, subd. (a)) and no need for the initial screening by the Department of Corrections and the Board of Prison Terms to determine whether "the person is likely to be a sexually violent predator" (§ 6601, subd. (b)). The recommitment procedure would begin with the "full evaluation" conducted by the DMH. (§ 6601, subds. (b) & (c).)

In support of their argument, the People provide a DMH memorandum explaining that the DMH has established a policy whereby SVPA recommitments "will be made in a manner consistent with reports to the court used for extensions in other legal classes." The memorandum specifies: "The recommendation to the district attorney for extended sexually violent predator commitment shall consist of a recommendation from the state hospital medical director and relevant materials from the state hospital staff. . . ." As petitioners point out, we may not consider this document. The document is not properly before this court, as it was not presented to the trial court. (See Cal. Rules of Court, rule 56(c).) ▇ In any event, the interpretation of the SVPA's recommitment procedures by the DMH, a state agency, is "not binding or necessarily even authoritative." (*Yamaha Corp of America*. v. *State Bd. of Equalization* (1998) 19 Cal.4th 1, 7-8 [78 Cal.Rptr.2d 1, 960 P.2d 1031].) We are required to independently review the statutory scheme. (*Ibid.*)

▇ The People point out that the procedure followed here was similar to the procedures prescribed for extended commitments under the Mentally Disordered Offenders (MDO) Law (Pen. Code, § 2970),[5] the procedures prescribed for extending the commitment of a person found not guilty by reason of insanity (Pen. Code, § 1026.5, subd. (b)),[6] and the procedures prescribed for extending commitments under the former Mentally Disordered Sex Offenders (MDSO) Law (former § 6316.2).[7] The fact that the Legislature prescribed procedures for recommitment under those laws supports our analysis and conclusion, because it demonstrates that the Legislature knows how to specifically prescribe recommitment procedures that

---

[5]Under Penal Code section 2970, the district attorney may file a petition for "continued involuntary treatment" of an MDO for one year upon receiving a "written evaluation" of the person from the medical director of the state hospital treating the person, the community program director in charge of the person's outpatient program, or the Director of the Department of Corrections.

[6]Under Penal Code section 1026.5, subdivision (b)(2), the prosecuting attorney may file a petition for "extended commitment" of a person found not guilty by reason of insanity upon receiving an "opinion" from the medical director of the state hospital treating the person or the medical director of the person's treatment program that the person meets the requirements for extended commitment set forth in Penal Code section 1026.5, subdivision (b)(1).

[7]Under former section 6316.2, the prosecuting attorney may file a "petition for extended commitment" of a person committed under the former MDSO Law if the Director of the

differ from initial commitment procedures. Its failure to prescribe specific recommitment procedures under the SVPA indicates that it did not intend to create a scheme different from the initial commitment process. (See *In re Parker* (1998) 60 Cal.App.4th 1453, 1467 [71 Cal.Rptr.2d 167] [in light of Legislature's use of language providing that qualifying SVP offenses could be proved with documentary evidence, its failure to provide that probable cause to believe a person is an SVP could be shown by documentary evidence indicates it did not intend to limit probable cause determination to paper review].)

We conclude that before the district attorney may file "a new petition for commitment" (§ 6604), the DMH must conduct a "full evaluation" of the person subject to the petition as provided in section 6601, which includes evaluation of the person "by two practicing psychiatrists or psychologists, or one practicing psychiatrist and one practicing psychologist." (§ 6601, subd. (d).) As neither petitioner was subject to a "full evaluation" before the instant petitions for commitment were filed, the petitions should have been dismissed.[8]

## DISPOSITION

*Butler v. Superior Court*, H020240: Let a peremptory writ issue commanding the superior court to vacate its ruling that there was probable cause to believe that Butler is likely to engage in sexually violent predatory criminal behavior upon his release and enter a new ruling dismissing the petition for commitment.

*Cheek v. Superior Court*, H020554: Let a peremptory writ issue commanding the superior court to vacate its ruling that there was probable cause to believe that Cheek is likely to engage in sexually violent predatory criminal behavior upon his release and enter a new ruling dismissing the petition for commitment.

Wunderlich, J., and Mihara, J., concurred.

---

DMH has "good cause" to believe that the person meets the requirements for extended commitment and submits "supporting evaluations and case file."

[8]We note that if petitioners are ultimately subject to subsequent extended commitments upon the proper filing of new petitions for commitment, such extended commitments would be deemed to begin on the date upon which petitioners' initial commitments terminated. (§ 6604.1, subd. (a) ["For subsequent extended commitments, the term of commitment shall be from the date of the termination of the previous commitment."].)