**Victor D. WOODARD, Petitioner,**

v.

**Stephen MAYBERG, Warden, Respondent.**

**No. C 01–3285 CRB (PR).**

United States District Court, N.D. California.

Jan. 23, 2003.

Victor Woodard, Atascadero, CA, pro se.

Pamela K. Critchfield, San Francisco, CA, for Respondent.

## ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS

BREYER, District Judge.

A jury in the Superior Court of the State of California in and for the County of Alameda found petitioner to be a sexually violent predator under California's Sexually Violent Predator Act, Cal. Welf. & Inst. Code § 6600 ("SVPA"), and civilly committed him to Atascadero State Hospital for a period of two years. Petitioner unsuccessfully appealed to the California Court of Appeal and the Supreme Court of California, which on August 29, 2001 denied review. (The state high court also rejected two requests for habeas relief.)

Petitioner then filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254. Per order filed on November 19, 2001, the court found that the petition, liberally construed, stated cognizable claims under § 2254 and ordered respondent to show cause why a writ of habeas corpus should not be granted. Respondent has filed an answer to the order to show cause and petitioner has filed a traverse.

## FACTUAL BACKGROUND

The California Court of Appeal summarized the facts of the case as follows:

Appellant was convicted in June 1993 of assault with a deadly weapon ( [Cal.] Pen.Code, § 245, subd. (a)(1)), sentenced to a three-year prison term, and paroled in 1995. Although not entirely clear from the record, appellant's parole was apparently revoked following a police report that he committed a sexual assault, and he was returned to the [California] Department of Corrections (CDC).

The instant trial resulted from the People's petition, filed in anticipation of his release from CDC on or about August 8, 1996, for his civil commitment as an SVP. The People's primary evidence was the testimony of three psychologists. Appellant presented no evidence.

### a. Dr. Jonathan French

Dr. Jonathan French, a psychologist, evaluated appellant in July 1996 and in September 1999. Based on documents he received from the Department of Mental Health, he determined that appellant had been convicted of two prior sexually violent predatory offenses. The first offense was against Deborah Joplin, who was acquainted with appellant on a first-name only basis because she lived in the same apartment complex as appellant. She had known him casually for approximately six months when he committed several forceful sexual assaults on her. The second offense was against Sherrilyn Harris, a prostitute whom appellant picked up in his van for the ostensible purpose of their obtaining some cocaine whom he thereafter assaulted sexually and with deadly weapons. When Dr. French asked appellant about these offenses, appellant either insisted they were consensual sexual contacts or he was the actual victim.

Dr. French diagnosed appellant as suffering from paraphilia, a broad category identified in the Diagnostic and Statistical Manual of the American Psychiatric Association, Fourth Edition, (DSM–IV) as "significant sexual distur-bance," with a related diagnosis of sexual sadism. He based his latter diagnosis on the fact that appellant employed more force and inflicted more physical injury than was necessary to accomplish the sexual acts themselves.

Dr. French also diagnosed appellant as suffering from polysubstance dependence and antisocial personality disorder. He described the latter as manifesting in a pronounced and chronic disregard for the rights of others, dishonesty, substance abuse, physical violence, and commission of crimes.

In evaluating appellant, Dr. French employed a rating scheme related to recidivism called "the Static 99." Appellant scored 8 out of a possible score of 12 based on 10 risk factors; a score of 6 is considered a high recidivism risk. Based on appellant's having a number of risk factors known to correlate to reoffending, his pattern and duration of behavior, and the nature of the sexual acts, Dr. French opined that appellant's paraphilia and anti-social personality disorder were chronic, that appellant was an SVP, and that he was at a very high risk to reoffend.

### b. Dr. Robert Owen

Dr. Owen, another psychologist, evaluated appellant in March 2000. Appellant refused to participate in a personal interview, so Dr. Owen's evaluation was based on material from the Department of Mental Health, which included arrest and probation officer reports, transcripts of victim interviews, and abstracts of judgment. Like Dr. French, he determined that the assaults of Joplin and Harris were sexually violent predatory offenses.

In reviewing appellant's criminal history, Dr. Owen noted sexual offenses against seven different women since 1975. In addition to the Joplin and Har-

ris offenses, three of the other offenses were violent assaults on strangers or casual acquaintances.

Dr. Owen diagnosed appellant as suffering from chronic paraphilia and antisocial personality disorder, and from polysubstance disorder. He defined antisocial personality disorder as a criminal orientation and an entrenched, longstanding violation of the rights of others. When Dr. Owen applied the Static 99 rating scheme to appellant, he computed a score placing appellant in the highest risk category.

Dr. Owen opined that appellant was an SVP who was likely to reoffend.

### c. *Dr. Dale Arnold*

Psychologist Dale Arnold evaluated appellant in April 2000. As with Dr, Owen, appellant refused to participate in a personal interview, so Dr. [Arnold's] evaluation was based on police, probation officer, and psychologists reports, Atascadero State Hospital records, preliminary hearing transcripts, and parole revocation reports. Dr. Arnold characterized the Joplin and Harris offenses as predatory sexually violent offenses. He made the same diagnoses as Drs. French and Owen: paraphilia, polysubstance dependence, and antisocial personality disorder. In his opinion, this combination is "lethal," making appellant "very likely" to reoffend. He administered Static 99 rating system and calculated a score of seven. His paraphilia diagnosis was based on appellant's 20–year history of nonconsensual sexual behavior involving multiple victims, which had continued despite appellant's incarceration therefor. His anti-social personality disorder diagnosis was based on appellant's behavior, starting at age 13, of believing he could do whatever he pleased, regardless of the damages his conduct caused others.

*People v. Woodard*, No. A092032, slip op. at 1–4 (Cal. Ct.App. June 22, 2001) (Resp't Ex. 2).

## DISCUSSION

### A. *Standard of Review*

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495.

"[A] federal habeas court may not issue the writ simply because the court con-

cludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411, 120 S.Ct. 1495. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409, 120 S.Ct. 1495.

In our circuit, a state court decision may be disturbed as involving an "unreasonable application" of clearly established federal law only if the federal habeas court reviewing the state court decision is left with a "definite and firm conviction" that an error was committed—in other words, "that clear error occurred." *Van Tran v. Lindsey,* 212 F.3d 1143, 1153–54 (9th Cir.2000). If the state court does not articulate a rationale for its decision, this court must conduct "an independent review of the record" to determine whether the state court "clearly erred" in its application of controlling federal law. *Delgado v. Lewis,* 223 F.3d 976, 982 (9th Cir.2000).

### B. *Claims*

Petitioner raises several constitutional challenges to SVPA, both generally and as applied, in eight "Arguments." He also claims, in "Argument IX," that he was denied effective assistance of counsel during SVPA proceedings.

#### 1. *Nature of SVPA: Civil or penal?*

■ In Arguments I and II, petitioner claims that SVPA is a penal statute providing continued punishment for past conviction and, therefore, that it violates the constitutional guarantee against "bills of attainder and bills of pains" and the constitutional guarantees to due process of law and equal protection. Pet. Attach. at 1–2, 3–6. In Argument IV, petitioner similarly claims that "[g]iven the fact that the SVPA is essentially punitive in nature and consti-

tutes an attempt to impose added retribution for past misdeed, it violates the Ex Post Facto Clause of the Constitution ... the logical conclusion is that the statute stands as a vindictive method by the State to impose additional punishment for past crimes." *Id.* at 18.

In his direct appeal, petitioner argued that SVPA is punitive and therefore violates ex post facto and double jeopardy principles, as well as the other constitutional principles raised herein. The California Court of Appeal rejected petitioner's claims:

[*Kansas v. Hendricks,* 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997),] held that a Kansas statutory scheme similar to the SVPA did not offend double jeopardy or ex post facto principles. [*Seling v. Young,* 531 U.S. 250, 121 S.Ct. 727, 148 L.Ed.2d 734 (2001),] more recently held that the determination by the Washington Supreme Court that Washington's sexually violent predator statute was civil in nature precluded a defendant from challenging the statute on the ground his confinement thereunder rendered the statute punitive as applied to him.

Relying heavily on *Hendricks,* our state Supreme Court rejected the claim that the SVPA conflicts, on its face, with ex post facto principles. [*Hubbart v. Superior Court,* 19 Cal.4th 1138, 1142–43, 81 Cal.Rptr.2d 492, 969 P.2d 584 (1999).] *Hubbart* scrupulously analyzed the SVPA's provisions, reviewed its legislative history, compared it to the Kansas statute at issue in *Hendricks,* and concluded that the SVPA is not punitive for ex post facto purposes. "Whether it is viewed in its original form or in light of amendments that have since been made, the SVPA cannot be meaningfully distinguished for ex post facto purposes from the Kansas scheme considered in

*Hendricks.*" [*Id.* at 1175, 81 Cal. Rptr.2d 492, 969 P.2d 584.] *Hubbart* makes clear that if the SVPA is not punitive, it does not violate double jeopardy. [*Id.* at 1172 n. 32, 81 Cal.Rptr.2d 492, 969 P.2d 584.]

*Seling* emphasized that a court will reject a Legislature's manifest intent that a commitment statute is civil rather than punitive in nature only where the party challenging the statute "provides the clearest of proof that the statutory scheme is so punitive in either purpose or effect as to negate the State's intention." [*Seling,* 531 U.S. at 261, 121 S.Ct. 727.] Although appellant purports to raise issues not considered by *Hendricks,* we conclude appellant has not satisfied his burden of proof and so we consider *Hubbart* dispositive. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455, 20 Cal.Rptr. 321, 369 P.2d 937.)

*People v. Woodard,* slip op. at 12–13. The California Court of Appeal did not err in denying petitioner's claims.

In *Kansas v. Hendricks,* 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), the Supreme Court of the United States held that civil commitment under Kansas's Sexually Violent Predator Act, based upon past conduct for which the offender has been convicted and punished, does not violate the Double Jeopardy or Ex Post Facto Clauses because the Kansas statute "does not establish criminal proceedings" and involuntary confinement thereunder "is not punitive." 521 U.S. at 369, 117 S.Ct. 2072. The first question considered by the Court was "whether the legislature meant the statute to establish 'civil' proceedings. If so, we ordinarily defer to the legislature's stated intent." *Id.* at 361, 117 S.Ct. 2072. The Court found such a legislative intent, adding: "Although we recognize that a civil label is not always dispositive, we will reject the legislature's manifest intent only where a party challenging the statute provides the clearest proof that the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil." *Id.* (citations and internal quotation marks omitted). Hendricks did not "satisfy this heavy burden." *Id.* at 361, 117 S.Ct. 2072.[1]

In *Seling v. Young,* 531 U.S. 250, 121 S.Ct. 727, 148 L.Ed.2d 734 (2001), the Court held that if a commitment statute is found to be civil under the criteria set forth in *Hendricks,* the statute "cannot be deemed punitive 'as applied' to a single individual in violation of the Double Jeopardy and Ex Post Facto Clauses and provide cause for release." 531 U.S. at 267, 121 S.Ct. 727. "The civil nature of a confinement scheme cannot be altered based merely on vagaries in the implementation of the authorizing statute." *Id.* at 263, 121 S.Ct. 727.

In *Hubbart v. Superior Court,* 19 Cal.4th 1138, 81 Cal.Rptr.2d 492, 969 P.2d 584 (1999), the Supreme Court of California held that SVPA does not violate the Ex Post Facto Clause because, like the Kansas statute in *Hendricks,* SVPA does not establish criminal proceedings and is not punitive. 19 Cal.4th at 1179, 81 Cal. Rptr.2d 492, 969 P.2d 584. Like the Supreme Court in *Hendricks,* the state high

---

**1.** The Court specifically reasoned that where a state has disavowed any punitive intent; limited civil confinement to a small segment of particularly dangerous individuals; provided strict procedural safeguards; directed that confined persons be segregated from the general prison population and afforded the same status as others who have been civilly committed; recommended treatment if such is possible; and permitted immediate release upon a showing that the individual is no longer dangerous or mentally impaired, it cannot be said that the state has acted with punitive intent. *Hendricks,* 521 U.S. at 368–69, 117 S.Ct. 2072.

court found it significant that, in enacting SVPA, the California legislature expressly disavowed any punitive purposes; described the law as establishing "civil commitment" proceedings; stated that qualifying defendants are not to be viewed "as criminals, but as sick persons;" and placed SVPA in the state's Welfare and Institutions Code in the section dealing generally with the care and treatment of the mentally ill. These factors, the court concluded, clearly manifest an intent to create " 'a civil commitment scheme designed to protect the public from harm.' " *Id.* at 1171, 81 Cal.Rptr.2d 492, 969 P.2d 584 (quoting *Hendricks,* 521 U.S. at 361, 117 S.Ct. 2072).

The Supreme Court of California's decision in *Hubbart* does not involve an unreasonable application of Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1). California's SVPA is strikingly similar to Kansas's statutory scheme upheld by the Supreme Court in *Hendricks. Accord Seling,* 531 U.S. at 260, 121 S.Ct. 727 (construing and upholding as a civil rather than punitive process Washington's sexually violent predator statutory scheme because Washington Act is strikingly similar to Kansas Act upheld in *Hendricks* ); *Munoz v. Kolender,* 208 F.Supp.2d 1125, 1134–35 (S.D.Cal.2002) (noting that California's SVPA procedures and confinement are civil in nature rather than criminal and punitive because, among other things, California's statutory scheme is similar to Kansas's and Washington's). And, for the essentially the same reasons, the California Court of Appeal's decision in the instant case—rejecting petitioner's claim that the punitive nature of SVPA violates various constitutional provisions—does not involve an unreasonable application of Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1). Petitioner sets forth no "clear[ ] proof" that SVPA is so punitive in either purpose or effect as to negate California's intention to deem it civil.

*Seling,* 531 U.S. at 261, 121 S.Ct. 727; *Hendricks,* 521 U.S. at 361, 117 S.Ct. 2072.

That SVPA applies only to those with qualifying criminal "convictions" does not compel a different result. SVPA was amended a year after its enactment to include violent sex offenses that result in a finding of not guilty by reason of insanity, *see* Cal. Welf. & Inst.Code § 6600(a)(2)(F), and is identical in this regard to the Kansas statute upheld by the Supreme Court in *Hendricks.* In any event, the fact that SVPA allows reliance on a prior criminal conviction to determine who qualifies for a civil commitment does not render the law punitive. SVPA "does not 'affix culpability' or seek 'retribution' for criminal conduct." *Hubbart,* 19 Cal.4th at 1175, 81 Cal.Rptr.2d 492, 969 P.2d 584 (citation omitted). As in *Hendricks,* "prior sexually violent offenses are used 'solely for evidentiary purposes' to help establish the main prerequisites upon which civil commitment is based—current medical disorder and the likelihood of future violent sex crimes." *Id.* (citation omitted). SVPA "does not impose liability or punishment for criminal conduct, and does not implicate ex post facto concerns insofar as pre-Act crimes are used as evidence in the [sexually violent predator] determination." *Id.*

Petitioner is not entitled to federal habeas relief on his claim that the punitive nature of SVPA violates various constitutional provisions (Arguments I, II and IV) because it cannot be said, applying a firm conviction standard, that the state courts "clearly err[ed]" in rejecting the claim. *Van Tran v. Lindsey,* 212 F.3d 1143, 1159 (9th Cir.2000).

*2. Predatory nature of prior offenses*

■ Petitioner claims in Argument III that SVPA violates due process and equal protection because it arbitrarily allows

CDC and Department of Mental Health ("DMH") evaluators to determine whether predicate offenses are "predatory" for purposes of determining whether an individual is a sexually violent predator. Pet. Attach. at 7–9.

To sustain a commitment under SVPA, the state must prove beyond a reasonable doubt that the offender has been convicted of a sexually violent offense against two or more victims, and that he suffers from a diagnosed mental disorder that makes him a danger to the health and safety of others because it is likely that he will engage in sexually violent criminal behavior. Cal. Welf. & Inst.Code §§ 6600(a)(1) & 6604; *Hubbart*, 19 Cal.4th at 1145, 81 Cal. Rptr.2d 492, 969 P.2d 584. The existence of the requisite prior qualifying convictions "may be shown with documentary evidence. The details underlying the commission of an offense that led to a prior conviction, including a predatory relationship with the victim, may be shown by documentary evidence, including, but not limited to, preliminary hearing transcripts, trial transcripts, probation and sentencing reports, and evaluations by the State Department of Health." Cal. Welf. & Inst. Code § 6600(a)(3).

In *People v. Torres*, 25 Cal.4th 680, 106 Cal.Rptr.2d 824, 22 P.3d 871 (2001), the Supreme Court of California held that, even if certain provisions of SVPA suggest that CDC, DMH or the trial court must make a determination about whether the prior convictions were predatory in nature, "it is clear that the Legislature has not chosen to effectuate this purpose by requiring the trier of fact at the trial to determine whether the defendant's predicate felonies involved predatory behavior." 25 Cal.4th at 686, 106 Cal.Rptr.2d 824, 22 P.3d 871. The predatory nature of the predicate offenses is not an element in determining whether a defendant is a sexually violent predator. *Id.* at 682, 106 Cal.Rptr.2d 824, 22 P.3d 871.

Petitioner's claim is without merit because the final arbiter of California Law—the Supreme Court of California—has determined that SVPA does not require the trier of fact to make the "predatory act" finding petitioner claims is made arbitrarily.[2] As the California Court of Appeal put it in rejecting a related claim, "Even assuming there was insufficient evidence for the crimes committed in the Joplin and Harris cases to meet the SVPA's definition of "predatory," they still constituted the kind of sexually violent offense sufficient to establish a requisite element of an SVP finding." *People v. Woodard,* slip op. at 9.[3]

Petitioner is not entitled to federal habeas relief on this claim (Argument III) because it cannot be said, after independently reviewing the record and applying a

---

**2.** Petitioner cannot complain here about the state high court's interpretation of SVPA because it is well-established that federal habeas relief is not available for alleged error in the interpretation or application of state law. *See Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Peltier v. Wright,* 15 F.3d 860, 861–62 (9th Cir.1994). Nor can he complain here, as he does throughout his petition, that SVPA violates California law. *See id.*

**3.** SVPA enumerates the requisite sexually violent offenses as, among others, rape and forcible copulation, the crimes for which petition-

er was convicted in the Joplin and Harris cases. *See* Cal. Welf. & Inst.Code § 6600(b). It defines "predatory" as an act "directed toward a stranger, a person of casual acquaintance with whom no substantial relationship exists, or an individual with whom a relationship has been established or promoted for the primary purpose of victimization." Cal. Welf. & Inst.Code § 6600(e). Even if the trier of fact was required to find that petitioner's predicate offenses involved predatory acts, petitioner does not demonstrate how a CDC or DMH finding on the issue, using the statutory definition above, was arbitrary.

firm conviction standard, that the state courts "clearly erred" in rejecting the claim. *Delgado v. Lewis,* 223 F.3d 976, 982 (9th Cir.2000).

### 3. *Statutory contractual obligation*

■ Petitioner claims in Argument V that former California Penal Code section 1364 created a contractual obligation on the part of the state to offer him treatment as a sex offender. According to petitioner, SVPA "impairs such statutory rights which were vested prior to enacting the SVPA statutes to the detriment of petitioner." Pet. Attach. at 20–23.

California Penal Code section 1364, which was in effect from 1982 to 1995, provided that "[t]he State Department of Mental Health shall develop a voluntary experimental treatment program that can be evaluated, limited to no more than 50 beds, for persons convicted of [certain] sex offenses .... [¶] The treatment shall only be done during the last two years of incarceration, and only persons who voluntarily consent shall be included in the program."

■ A statute "is itself treated as a contract when the language and circumstances evince a legislative intent to create private rights of a contractual nature enforceable against the State." *United States Trust Co. of New York v. New Jersey,* 431 U.S. 1, 17 n. 14, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977) (citation omitted). There is no such language or circumstances here. Former section 1364 did not create a private right of contract against the government for sex offender treatment.

Petitioner is not entitled to federal habeas relief on this claim (Argument V) because it cannot be said, after independently reviewing the court and applying a firm conviction standard, that the state courts "clearly erred" in rejecting the claim. *Delgado,* 223 F.3d at 982.

### 4. *Notification of SVPA screening and evaluation process*

■ Petitioner claims in Argument VI that his right to procedural due process was violated because he was not afforded "notification of the implementation of the SVPA screening and evaluation process until the prison personnel advised petitioner of the initial scheduled appointment with the first 'evaluator,' approximately 14 hours prior to said appointment." Pet. Attach. at 24–27.

Section 6601 provides for screening and evaluation of prisoners by CDC and DMH to determine whether a prisoner is a potential sexually violent predator under SVPA. *See* Cal. Welf. & Inst.Code § 6601. If two DMH evaluators concur that a prisoner has "a diagnosed mental disorder" so that he is "likely to engage in acts of sexual violence without appropriate treatment and custody," the Director of DMH forwards a request to the appropriate district attorney asking for the filing of a petition for commitment under SVPA. *Id.* § 6601(d). A probable cause hearing and trial in state superior court may then follow. *See id.* §§ 6602—6603.

SVPA does not provide for notification prior to screening and evaluation. Nor is it clearly established that the Due Process Clause requires such notification. The screening and evaluation process does not appear to amount to the sort of dispositive hearing for which a prisoner needs advance notice to marshal the facts and prepare a defense. *Cf. Wolff v. McDonnell,* 418 U.S. 539, 564, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (prisoner facing disciplinary hearing must be given advance notice of disciplinary charges against him in order to enable him to marshal the facts and prepare a defense). That generally will come at the probable cause hearing and jury trial, if a petition for commitment is filed. Not surprisingly, there is no Su-

preme Court precedent requiring that an individual must be given notification prior to being screened and evaluated under the circumstances of this case.

In fact, *Hendricks* suggests that SVPA provides adequate procedural due process protections. In *Johnson v. Nelson*, 142 F.Supp.2d 1215 (S.D.Cal.2001), the court so held:

> *Hendricks* found that Kansas'[s] statutory scheme provided sufficient due process protections for a person subject to civil commitment, in part because "proper procedur[al] and evidentiary standards" were present. *Hendricks*, 521 U.S. at 356–57, 360, 117 S.Ct. 2072[ ]. Again, the California Supreme Court has found that California's SVP Act is nearly identical to the statute upheld in *Hendricks*, and Petitioner has provided this Court with no basis for disturbing that decision. *See Hubbart*, 19 Cal.4th at 1138, 1157, 81 Cal.Rptr.2d 492, 969 P.2d 584[ ]. Thus, California's SVP Act similarly provides sufficient procedural due process protections . . . .

142 F.Supp.2d at 1230. This court agrees.[4] And, as in *Johnson*, the record here makes clear that petitioner "had an opportunity to challenge every aspect of his commitment under the 'proper procedures and evidentiary standards' contained in the California SVP Act as required by *Hendricks*." *Id.* (citation omitted).

Petitioner is not entitled to federal habeas relief on this claim (Argument VI) because it cannot be said that the state courts' rejection of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

### 5. Timing of SVPA petition

■ Petitioner claims in Argument VII that his "due process, speedy trial, and equal protection rights" were violated because the filing of the SVPA petition was done at the "11th hour" in violation of state law and because he was "held in custody past his scheduled release date without statutory probable cause being found." Pet. Attach. at 28–43.

The record shows that petitioner was convicted of assault with a deadly weapon in June 1993, sentenced to a three-year prison term, and paroled in 1995. His parole was revoked following a police report that he had committed a sexual assault, and he was given a release date of August 8, 1996. *See* Clerk's Tr. at 199–204 (Resp't Ex. 1). On July 17, 1996, the Board of Prison Terms issued an order stating "Place a [section] 6601.3 . . . hold for a period not to exceed 72 hours of a normal working day [weekends and holidays excluded]." *Id.* at 185, 197.[5] (The hold was effective August 8, 1996 until

---

**4.** The Supreme Court recently reconsidered the constitutionality of the Kansas Act's evidentiary standard and held that due process does not permit a civil commitment under the Kansas Act without any lack of control determination being made. *Kansas v. Crane*, 534 U.S. 407, 410, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002). *Crane* did not alter any other aspect of *Hendricks*, however. And, in contrast to the Kansas Act, California's SVPA requires a lack of control determination prior to commitment. *See People v. Superior Court (Ghilotti)*, 27 Cal.4th 888, 915–29 & nn. 12 & 15, 119 Cal.Rptr.2d 1, 44 P.3d 949 (2002).

**5.** The relevant portion of section 6601.3 in effect at the time stated:

> (a) The Board of Prison Terms may order that a person referred to the State Department of Mental Health pursuant to subdivision (b) of Section 6601 remain in custody for no more than 45 days for full evaluation pursuant to subdivisions (c) to (h), inclusive, of Section 6601, unless his or her scheduled date of release falls more than 45 days after the referral.

midnight on August 13, 1996. *Id.*) On August 1, 1996, petitioner was notified that the Board of Prison Terms would hold a probable cause hearing and would request a 45–day hold. *See id.* at 185, 195–96. On August 12, 1996, the Board of Prison Terms held a probable cause hearing at which petitioner was present and represented by counsel. *See id.* at 185–86, 191–94. After the hearing, a probable cause finding was made and the Board of Prison Terms imposed a 45–day hold on petitioner pursuant to section 6601.3, commencing on August 13, 1996 until September 26, 1996. *See id.* at 193–94. On August 19, 1996, a petition for commitment was filed by the Alameda County District Attorney and, on September 3, 1996, the trial court made a finding that the petition stated probable cause on its face pursuant to section 6601.5. *Id.* at 10.[6] On September 5, 1996, the trial court held a probable cause hearing and found probable cause. *Id.* at 11.

On December 10, 1997, petitioner filed a motion to dismiss the petition arguing, as he does here, that CDC failed to take action within mandatory time limits and that he was not lawfully in custody at the time of the filing of the petition. *See id.* at 166–70. The trial court held a hearing and denied the motion on December 17, 1997.

*See id.* at 226–41. (A jury subsequently determined that petitioner was a sexually violent predator.)

Petitioner's claim that he was not lawfully in custody at the time of the filing of the petition is belied by the record. In addition, in rejecting the motion to dismiss, the trial court implicitly found that the initial 72–hour hold, the notice of the Board of Prison Terms's probable cause hearing, the hearing, the subsequent 45–day hold and the filing of the petition, were lawfully carried out pursuant to California law. That determination of state law is binding on this court. And even if there was some minor legal error in the "chain of custody" leading to the filing of the petition for commitment, California courts have now made it clear that such error does not defeat jurisdiction to file the petition because SVPA only requires "custody," not "lawful custody," before a petition is filed. *See, e.g., People v. Hedge,* 72 Cal.App.4th 1466, 1478–80, 86 Cal.Rptr.2d 52 (1999).[7]

■ Petitioner is not entitled to federal habeas relief on his claim of "unlawful custody" because it cannot be said that the state courts' rejection of the claim was contrary to, or an unreasonable application of, Supreme Court precedent. *See* 28 U.S.C. § 2254(d); *accord Johnson v. Nel-*

**6.** The relevant portion of section 6601.5 in effect at the time stated:

(a) In cases where an inmate's parole or temporary parole hold pursuant to Section 6601.3 will expire before a probable cause hearing is conducted pursuant to Section 6602, the agency bringing the petition may request an urgency review pursuant to this section. Upon that request, a judge of the superior court shall review the petition and determine whether the petition states or contains sufficient facts that, if true, would constitute probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release. If the judge determines that the petition, on its face, supports a finding of probable cause,

the judge shall order that the person be detained in a secure facility until a hearing can be held pursuant to Section 6602. The probable cause hearing provided for in Section 6602 shall be held within 10 calendar days of the date of the order issued by the judge pursuant to this section.

**7.** This interpretation of SVPA is neither "contrary to" nor "an unreasonable application of" Supreme Court precedent. *See Johnson v. Nelson,* 142 F.Supp.2d 1215, 1229–30 (S.D.Cal.2001) (concluding that federal jurisprudence addressing due process protections supplies ample basis for a finding that the state courts' interpretation of SVPA requiring only "custody" is narrowly tailored to serve a compelling state interest).

*son,* 142 F.Supp.2d 1215, 1227–30 (S.D.Cal. 2001) (rejecting similar claim under 28 U.S.C. § 2254(d)).[8]

#### 6. *Non-referral to treatment program*

██ Petitioner claims in Argument VIII that his due process and equal protection rights were violated because "[a]s a matter of basic jurisprudence, the Director of Corrections must be precluded from requesting for an inmate to be adjudicated an SVP if the Director has not even attempted to seek mental 'treatment' of the inmate prior to the issue actually affecting the inmate's liberty interest." Pet. Attach. at 44–52. He alleges that the prosecution had a responsibility to "evaluate, assert position, and provide effective treatment to petitioner during his DSL prison term" and, therefore, judicial estoppel prevents his commitment under SVPA.

Petitioner argues that before he could be committed under SVPA, he should have been placed in a state hospital and treated under either California Penal Code section 1364 or section 2684.[9] Petitioner cites no authority in support of his arguments, and the court has found none. Neither section 1363 nor section 2684 "required" the state to provide any sort of treatment to petitioner, much less precluded the state from committing petitioner under SVPA. The claim is wholly without merit.

Petitioner is not entitled to federal habeas relief on this claim because it cannot be said that the state courts' rejection of the claim was contrary to, or an unreasonable

application of, Supreme Court precedent. *See* 28 U.S.C. § 2254(d).

#### 7. *Ineffective assistance of counsel*

Petitioner claims in Argument IX that he received ineffective assistance of counsel during the pendency of his civil commitment proceedings. Pet. Attach. at 53–57. He specifically claims that counsel was deficient because: (1) petitioner was "forc[ed] . . . to accept (and/or obtain) representation during the proverbial 11th hour when representation of counsel was basically meaningless," and (2) "actual assistance of counsel is/was deficient upon its face, based upon lack of effective communication and refusal to fully advocate petitioner's statutory and constitutional rights." *Id.* at 54–55.

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

---

**8.** Nor is petitioner entitled to federal habeas relief on his accompanying claim that the "11th hour" filing of the petition prejudiced his ability to defend himself. Petitioner's claim is speculative and without any definite proof of actual prejudice. *See, e.g., United States v. Ross,* 123 F.3d 1181, 1185–86 (9th Cir.1997) (proof of prejudice must be definite and not speculative; witness' death before

trial did not amount to actual prejudice because the expected content of his testimony was speculative and cumulative).

**9.** Section 2684, much like section former section 1364 (discussed *supra* at pages 703–704), gives the Director of Corrections discretion to refer a mentally ill or deficient prisoner to a state hospital for care and treatment. *See* Cal.Penal Code § 2684(a).

708

Judicial scrutiny of counsel's performance must be highly deferential. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and the defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *Id.* at 689, 104 S.Ct. 2052.

Petitioner has the burden of "showing" that counsel's performance was deficient. *Toomey v. Bunnell,* 898 F.2d 741, 743 (9th Cir.1990). Similarly, he must "affirmatively prove prejudice." *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052.

 Petitioner's conclusory allegations of ineffective assistance do not warrant relief. *See Jones v. Gomez,* 66 F.3d 199, 205 (9th Cir.1995). He does not specifically show how counsel's performance fell below an "objective standard of reasonableness," and he does not "affirmatively prove prejudice." *Strickland,* 466 U.S. at 687–88, 693, 104 S.Ct. 2052. At most, petitioner alleges that he was prejudiced by counsel's deficient performance because counsel failed to raise the "points of law and contentions made within the instant petition." But this is not enough. Petitioner has not shown that "there is a reasonable probability that," but for counsel's failure to raise the points of law and contentions raised here, "the result of the [SVPA] proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. After all, none of the points of law and contentions made within the instant petition proved meritorious on appeal or on state or federal collateral review.[10]

---

10. Nor is this one of those rare cases where prejudice should be presumed because counsel "entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing." *United States v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). The record shows that, contrary to petitioner's

Petitioner is not entitled to federal habeas relief on this claim of ineffective assistance of counsel (Argument IX) because it cannot be said that the state courts' rejection of the claim was contrary to, or an unreasonable application of, Supreme Court precedent. *See* 28 U.S.C. § 2254(d).

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

The clerk shall enter judgment in favor of respondent and close the file.

SO ORDERED.

representation, counsel challenged the CDC's actions through two motions to dismiss the SVPA petition for lack of timeliness, a demurrer to the petitioner on the ground that SVPA is unconstitutional, and a motion to strike petitioner's prior convictions. *See* Clerk's Tr. at 11–13, 33–37, 166–70.